**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PAULA L. BLAIR; ANDREA ROBINSON; HARRIS A. FALECHIA, *Plaintiffs-Appellees*, <br><br> v. <br><br> RENT-A-CENTER, INC., a Delaware corporation; RENT-A-CENTER WEST, INC., a Delaware corporation, *Defendants-Appellants*. | No. 17-17221 <br><br> D.C. No. 3:17-cv-02335-WHA <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted February 12, 2019
San Francisco, California

Filed June 28, 2019

Before: M. Margaret McKeown, William A. Fletcher,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge W. Fletcher

## SUMMARY[*]

### Arbitration / Preemption

The panel affirmed the district court's denial of Rent-A-Center's motion to compel arbitration and motion for a mandatory stay in a putative class action alleging Rent-A-Center charged excessive prices; and dismissed for lack of jurisdiction Rent-A-Center's appeals of the district court's denial of a discretionary stay and deferral on the motion to strike class claims.

In *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017), the California Supreme Court held that a contractual agreement purporting to waive a party's right to seek public injunctive relief in any forum was unenforceable under California law. The panel held that the Federal Arbitration Act does not preempt California's *McGill* rule.

Turning to the parties' 2015 rent-to-own agreement for an air conditioner, the panel held that its severance clause, which severs plaintiff's California's Karnette Rental-Purchase Act, Unfair Competition Law, and Consumer Legal Remedies Act claims from the scope of arbitration, was triggered by the *McGill* rule. The panel further held that the severance clause permitted such claims to be brought in court.

The panel affirmed the district court's refusal to impose either a mandatory or discretionary stay on the non-arbitrable claims pending arbitration of plaintiff's usury claim.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that it lacked jurisdiction to review the district court's denial of a discretionary stay because appellate jurisdiction under the Federal Arbitration Act over interlocutory appeals is limited to the orders listed in 9 U.S.C. § 16(a)(1). The panel held that a discretionary stay that was based on the district court's inherent authority to manage its docket was not a stay under section 3 of the Federal Arbitration Act, and the exceptions that might justify extension of appellate jurisdiction did not apply to the *denial* of a stay. The panel also held that it lacked jurisdiction to review the district court's decision to defer ruling on Rent-A-Center's motion to strike because it was a non-final appealable order not covered by one of the categories set forth in 9 U.S.C. § 16(a)(1)(A).

## COUNSEL

Robert F. Friedman (argued) and Vicki L. Gillete, Littler Mendelson P.C., Dallas, Texas; Gregory G. Iskander, Littler Mendelson P.C., Walnut Creek, California; Kaitlyn M. Burke, Littler Mendelson P.C., Las Vegas, Nevada; Kirsten F. Gallacher and Vickie Turner, Wilson Turner Kosmo LLP, San Diego, California; Lily A. North and Henry J. Escher III, Dechert LLP, San Francisco, California; Christina Sarchio, Dechert LLP, Washington, D.C.; for Defendants-Appellants.

Michael Rubin (argued) and Eric P. Brown, Altshuler Berzon LLP, San Francisco, California; Zach P. Dostart and James T. Hannink, Dostart Hannink & Coveneny LLP, La Jolla, California; for Plaintiffs-Appellees.

## OPINION

W. FLETCHER, Circuit Judge:

In *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017), the California Supreme Court decided that a contractual agreement purporting to waive a party's right to seek public injunctive relief in any forum is unenforceable under California law. We are asked to decide in this case whether the Federal Arbitration Act ("FAA") preempts California's *McGill* rule.[1] We hold it does not.

Plaintiffs brought a putative class action alleging that defendants Rent-A-Center, Inc. and Rent-A-Center West, Inc. (collectively, "Rent-A-Center") charged excessive prices for its rent-to-own plans for household items. We affirm the district court's partial denial of Rent-A-Center's motion to compel arbitration. We also affirm the district court's denial of Rent-A-Center's motion for a mandatory stay of plaintiffs' non-arbitrable claims. Finally, we dismiss for lack of jurisdiction Rent-A-Center's appeal of the district court's denial of a discretionary stay and its decision to defer ruling on a motion to strike class action claims.

## I. Factual and Procedural Background

Rent-A-Center operates stores that rent household items to consumers for set installment payments. If all payments

---

[1] This panel received briefing and heard argument in two additional cases raising this same question: *McArdle v. AT&T Mobility LLC* (No. 17-17221) and *Tillage v. Comcast Corp.* (No. 18-15288). Those cases are resolved in separate memorandum dispositions filed simultaneously with this opinion.

are made on time, the consumer takes ownership of the item. Rent-A-Center also sets a cash price at which the consumer can purchase the item before the rent-to-own period has ended.

Paula Blair entered into rent-to-own agreements with Rent-A-Center for an air conditioner in 2015 and for a used Xbox in 2016. Blair, together with two other named plaintiffs, filed a class action complaint on March 13, 2017, on behalf of all individuals who, on or after March 13, 2013, entered into rent-to-own transactions with Rent-A-Center in California. The complaint alleged that Rent-A-Center structured its rent-to-own pricing in violation of state law.

In 1994, the California Legislature enacted the Karnette Rental-Purchase Act, Cal. Civ. Code §§ 1812.620 et seq. ("Karnette Act"), to "prohibit unfair or unconscionable conduct toward consumers" who enter into rent-to-own agreements. *Id.* § 1812.621. The Karnette Act sets statutory maximums for both the "total of payments" amount for installment payments and the "cash price" for rent-to-own items. *Id.* § 1812.644. These maximums are set in proportion to the "documented actual cost" of the items to the lessor/seller. *Id.* § 1812.622(k).

The operative complaint includes claims under the Karnette Act, as well as the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL"), the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq. ("CLRA"), and California's anti-usury law, Cal. Const. art. XV, § 1(1). Plaintiffs seek a "public injunction" on behalf of the people of California to enjoin future violations of these laws, and to require that Rent-A-Center provide an accounting of monies obtained from California consumers

and individualized notice to those consumers of their statutory rights. Plaintiffs also seek declaratory relief, compensatory damages and restitution, and attorneys' fees and costs.

Of the named plaintiffs, Rent-A-Center has a valid arbitration agreement only with Blair, and only with respect to her 2015 air conditioner agreement. Blair opted out of arbitration in her 2016 Xbox agreement, and Rent-A-Center has been unable to locate signed arbitration agreements for either of the other two named plaintiffs. In June 2017, Rent-A-Center filed a motion to compel arbitration of all claims arising out of Blair's 2015 agreement, which reads in relevant part:

> **(B) What Claims Are Covered:** You and RAC [Rent-A-Center] agree that, in the event of any dispute or claim between us, either you or RAC may elect to have that dispute or claim resolved by binding arbitration. This agreement to arbitrate is intended to be interpreted as broadly as the FAA allows. Claims subject to arbitration include . . . claims that are based on any legal theory whatsoever, including . . . any statute, regulation or ordinance.

> . . .

> **(D) Requirement of Individual Arbitration**: You and RAC agree that arbitration shall be conducted on an individual basis, and that neither you nor RAC may seek, nor may the Arbitrator award, relief that would affect RAC

account holders other than you. There will be no right or authority for any dispute to be brought, heard, or arbitrated as a class, collective, mass, private attorney general, or representative action. . . . If there is a final judicial determination that applicable law precludes enforcement of this Paragraph's limitations as to a particular claim for relief, then that claim (and only that claim) must be severed from the arbitration and may be brought in court.

The district court concluded that the agreement violates California's *McGill* rule because it constitutes a waiver of Blair's right to seek public injunctive relief in any forum. The court also held the *McGill* rule was not preempted by the FAA. Relying on the severance clause at the end of Paragraph (D), the court held that Blair's Karnette Act, UCL, and CLRA claims "must be severed from the arbitration." The district court granted Rent-A-Center's motion to compel arbitration of Blair's usury claim because California's usury law "is not amenable to public injunctive relief."

The district court denied Rent-A-Center's motion to stay proceedings on claims not sent to arbitration—including those of the other two named plaintiffs—pending the outcome of arbitration. It also delayed ruling on Rent-A-Center's motion to strike class action claims.

Rent-A-Center appealed the district court's denial of its motion to compel arbitration of Blair's Karnette Act, UCL, and CLRA claims. Rent-A-Center also appealed the court's denial of the motion to stay proceedings and its delay in ruling on the motion to strike.

## II. The *McGill* Rule

Several California consumer protection statutes make available the remedy of a public injunction, which is defined as "injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill*, 393 P.3d at 87. One key difference between a private and public injunction is the primary beneficiary of the relief. Private injunctions "resolve a private dispute" between the parties and "rectify individual wrongs," though they may benefit the general public incidentally. *Id.* at 89 (internal alterations and citation omitted). By contrast, public injunctions benefit "the public directly by the elimination of deceptive practices," but do not otherwise benefit the plaintiff, who "has already been injured, allegedly, by such practices and [is] aware of them." *Id.* at 90 (internal citation and quotations omitted).

The California Supreme Court held in *McGill* that an agreement to waive the right to seek public injunctive relief violates California Civil Code § 3513, which provides that "a law established for a public reason cannot be contravened by a private agreement." *Id.* at 93. Under § 3513, a party to a private contract may waive a statutory right only if the "statute does not prohibit doing so, the statute's public benefit is merely incidental to its primary purpose, and waiver does not seriously compromise any public purpose that the statute was intended to serve." *Id.* at 94 (internal alterations and citations omitted).

The California Supreme Court found that public injunctive relief available under the UCL and CLRA, among other statutes, is "[b]y definition . . . primarily 'for the benefit of the general public.'" *Id.* (citing *Broughton v. Cigna*

*Healthplans of Cal.*, 988 P.2d 67 (Cal. 1999); *Cruz v. PacifiCare Health Sys., Inc.*, 66 P.3d 1157 (Cal. 2003)). Waiver "of the right to seek public injunctive relief under these statutes would seriously compromise the public purposes the statutes were intended to serve." *Id.* Therefore, such waivers are "invalid and unenforceable under California law." *Id.*

The contract at issue in *McGill* was an arbitration agreement waiving the plaintiff's right to seek public injunctive relief in arbitration and requiring arbitration of all claims, thereby waiving the plaintiff's right to seek a public injunction through litigation. *Id.* at 87–88. Because this waiver prevented the plaintiff from seeking a public injunction in any forum, it was unenforceable under California Civil Code § 3513. *Id.* at 94.

## III. FAA Preemption

Rent-A-Center argues the district court erred in denying its motion to compel arbitration of Blair's Karnette Act, UCL, and CLRA claims, contending that the *McGill* rule is preempted by the FAA. We have appellate jurisdiction under 9 U.S.C. § 16(a)(1)(C), which allows an interlocutory appeal of a district court's denial of a motion to compel arbitration. We review de novo such a denial. *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1057 (9th Cir. 2013) (en banc). We also review de novo a district court's preemption analysis. *AGG Enters. v. Washington Cty.*, 281 F.3d 1324, 1327 (9th Cir. 2002).

### A.  Federal Arbitration Act

The FAA directs courts to treat arbitration agreements as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The saving clause of § 2 "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation omitted).  "[T]he saving clause does not save defenses that target arbitration either by name or by more subtle methods, such as by 'interfer[ing] with fundamental attributes of arbitration.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (quoting *Concepcion*, 563 U.S. at 344).

The Supreme Court has described the FAA as establishing "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  While the "FAA contains no express pre-emptive provision," it preempts state law "to the extent that [the state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989).  A state-law rule can be preempted by the FAA in two ways.

First, a state-law rule is preempted if it is not a "generally applicable contract defense[]" and so does not fall within the saving clause as a "ground[] . . . for the revocation of any contract." 9 U.S.C. § 2; *Concepcion*, 563 U.S. at 339.  A rule is generally applicable if it "appl[ies] equally to arbitration

and non-arbitration agreements." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 432 (9th Cir. 2015). By contrast, a rule is not generally applicable if it "prohibits outright the arbitration of a particular type of claim." *Concepcion*, 563 U.S. at 341.

Second, even a generally applicable rule may be preempted if it "stand[s] as an obstacle to the accomplishment of the FAA's objectives." *Id.* An "overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* As the Supreme Court recently restated, "[t]he general applicability of [a] rule [does] not save it from preemption under the FAA" if the rule "interferes with fundamental attributes of arbitration." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019) (citing *Concepcion*, 563 U.S. at 344).[2]

## B.  *Concepcion* and *Sakkab*

The Supreme Court's decision in *Concepcion* and our decision in *Sakkab* guide our analysis. Indeed, our decision in *Sakkab* all but decides this case.

In *Concepcion*, the Supreme Court considered whether the FAA preempted California's *Discover Bank* rule that class waivers in most consumer arbitration agreements were unconscionable under California law. *See Discover Bank v.*

---

[2] The parties filed notices of supplemental authority pursuant to Federal Rule of Appellate Procedure 28(j) informing this court of the Supreme Court's decision in *Lamps Plus*, which was published after oral argument in this case. We have reviewed the Supreme Court's decision and considered it in our analysis.

*Superior Court*, 113 P.3d 1100 (Cal. 2005).   The Court recognized that unconscionability is "a doctrine normally thought to be generally applicable." *Concepcion*, 563 U.S. at 341.  The Court nonetheless held the *Discover Bank* rule was preempted because it "interfere[d] with fundamental attributes of arbitration and thus create[d] a scheme inconsistent with the FAA." *Id.* at 344.  According to the Court, "the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Id.* at 348. The Court recognized that "class arbitration *requires* procedural formality" because if "procedures are too informal, absent class members would not be bound by the arbitration"—that is, due process compels procedural complexity in class arbitration. *Id.* at 349 (emphasis in original).   The Court noted that "class arbitration greatly increases risks to defendants" because it combines high stakes with limited appellate review. *Id.* at 350–51.  The Court concluded that classwide arbitration is therefore "not arbitration as envisioned by the FAA" and "lacks its benefits." *Id.* at 351.

In the wake of *Concepcion*, we considered in *Sakkab* whether the FAA preempts California's *Iskanian* rule, which bars contractual waiver in any fora of representative claims under California's Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code §§ 2698 et seq. *See Sakkab*, 803 F.3d at 427; *Iskanian v. CLS Transp. L.A., LLC*, 327 P.3d 129 (Cal. 2014).  PAGA "authorizes an employee to bring an action for civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the employee and fellow employees, with most of the

proceeds of that litigation going to the state." *Iskanian*, 327 P.3d at 133.

We concluded that the *Iskanian* rule is generally applicable because it "bars any waiver of PAGA claims, regardless of whether the waiver appears in an arbitration agreement or a non-arbitration agreement." *Sakkab*, 803 F.3d at 432. We also noted that the rule does not "prohibit the arbitration of any type of claim." *Id.* at 434. We recognized that although the purpose of the FAA is "to ensure that private arbitration agreements are enforced according to their terms," the saving clause of § 2 would be rendered "wholly ineffectual" if that purpose overrode all state-law contract defenses. *Id.* (internal quotations and citations omitted). Instead, "Congress plainly . . . intend[ed] to preempt . . . only those [state contract defenses] that 'interfere[] with arbitration.'" *Id.* (quoting *Concepcion*, 563 U.S. at 346).

We held the *Iskanian* rule does not interfere with arbitration. *Id.* at 435. Most important, the *Iskanian* rule does "not diminish parties' freedom to select informal arbitration procedures." *Id.* PAGA actions, unlike class actions, do not "resolve[] the claims of other employees," so "there is no need to protect absent employees' due process rights in PAGA arbitrations." *Id.* at 436. Nor does California state law "purport[] to limit parties' right to use informal procedures, including limited discovery." *Id.* at 438–39. Finally, while PAGA actions "may . . . involve high stakes" due to "hefty civil penalties," the FAA does not preempt causes of action merely because they impose substantial liability. *Id.* at 437. We concluded that "the *Iskanian* rule does not conflict with the FAA, because it leaves parties free to adopt the kinds of informal procedures normally available in arbitration." *Id.* at 439.

## C. Discussion

### 1. Generally Applicable Contract Defense

The *McGill* rule, like the *Iskanian* rule, is a generally applicable contract defense. The California Supreme Court specified that a waiver of public injunctive relief in "*any* contract—even a contract that has no arbitration provision"—is "unenforceable under California law." *McGill*, 393 P.3d at 94 (emphasis in original). The *McGill* rule thus applies "equally to arbitration and non-arbitration agreements." *Sakkab*, 803 F.3d at 432.

Rent-A-Center argues that the *McGill* rule is equivalent to an earlier and now-preempted California rule called the *Broughton-Cruz* rule. *See Broughton*, 988 P.2d 67; *Cruz*, 66 P.3d 1157. The *Broughton-Cruz* rule had established that "[a]greements to arbitrate claims for public injunctive relief . . . are not enforceable in California." *McGill*, 393 P.3d at 90. We held in *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 934 (9th Cir. 2013), that the FAA preempted the *Broughton-Cruz* rule because it "prohibits outright" the arbitration of public injunctive relief. The *McGill* rule bears no resemblance to the *Broughton-Cruz* rule. It shows no hostility to, and does not prohibit, the arbitration of public injunctions. It merely prohibits the waiver of the right to pursue public injunctive relief in any forum; the *Broughton-Cruz* rule specifically excluded public injunctive claims from arbitration.

The *McGill* rule is also unlike the rule at issue in *Kindred Nursing Centers Ltd. Partnership v. Clark*, 137 S. Ct. 1421 (2017). In that case, the Supreme Court struck down a judge-made Kentucky rule that an agent with general power of

attorney could not waive a principal's right to a jury trial without explicit consent of the principal. *Id.* at 1425. The rule had been invoked to invalidate two arbitration agreements. *Id.* Though the rule did not explicitly forbid the arbitration of claims, the Court held that "a legal rule hinging on the primary characteristic of an arbitration agreement—namely, a waiver of the right to go to court and receive a jury trial"—impermissibly targets arbitration. *Id.* at 1427. Unlike the Kentucky rule, the *McGill* rule does not "rely on the uniqueness of an agreement to arbitrate" to categorically disfavor arbitration as a forum. *See id.* at 1426 (quoting *Concepcion*, 563 U.S. at 341). To the contrary, the *McGill* rule expresses no preference as to whether public injunction claims are litigated or arbitrated, it merely prohibits the waiver of the right to pursue those claims in any forum.

Moreover, the Court in *Kindred* noted that the underlying principle behind the Kentucky rule—that an agent cannot waive a principal's "fundamental constitutional right" without express consent—had never been applied outside the context of arbitration. *Id.* at 1427–28. By contrast, the *McGill* rule derives from a general and long-standing prohibition on the private contractual waiver of public rights. California courts have repeatedly invoked California Civil Code § 3513 to invalidate waivers unrelated to arbitration. *See, e.g.*, *County of Riverside v. Superior Court*, 42 P.3d 1034, 1042 (Cal. 2002) (holding that a police officer's "blanket waiver" of his rights under the Public Safety Officers Procedural Bill of Rights Act as a condition of his employment would be inconsistent with § 3513); *Covino v. Governing Bd.*, 142 Cal. Rptr. 812, 817 (Ct. App. 1977) (invalidating under § 3513 a teacher's waiver of his right under the Education Code to become a contract, rather than

temporary, employee); *Benane v. Int'l Harvester Co.*, 299 P.2d 750, 753 (Cal. Ct. App. 1956) (invalidating under § 3513 a collective bargaining agreement provision waiving employees' rights under the Election Code to be paid for time taken off work to vote); *De Haviland v. Warner Bros. Pictures*, 153 P.2d 983, 988 (Cal. Ct. App. 1944) (invalidating under § 3513 a movie star's contractual waiver of the Labor Code's seven-year limit on personal service contracts); *Cal. Powder Works v. Atl. & Pac. R.R. Co.*, 45 P. 691, 693 (Cal. 1896) (relying on § 3513 to construe a common carrier's contractual exemption from liability to exclude liability caused by the carrier's negligence because that liability is "imposed upon it by law").

In sum, the *McGill* rule is a generally applicable contract defense derived from long-established California public policy. It is a "ground[] . . . for the revocation of any contract" and falls within the FAA's saving clause at the first step of the preemption analysis. 9 U.S.C. § 2.

## 2. Interference with Arbitration

"[A] doctrine normally thought to be generally applicable" is nonetheless preempted by the FAA if it "stand[s] as an obstacle to the accomplishment of the FAA's objectives." *Concepcion*, 563 U.S. at 341, 343. One objective of the FAA is to enforce arbitration agreements according to their terms "so as to facilitate streamlined proceedings." *Id.* at 344. However, we "do not read *Concepcion* to require the enforcement of all waivers of representative claims in arbitration agreements." *Sakkab*, 803 F.3d at 436. Instead, "Congress plainly . . . intend[ed] to preempt . . . only those [state contract defenses] that 'interfere[] with arbitration.'" *Id.* at 434 (quoting

*Concepcion*, 563 U.S. at 346). Accordingly, we look at "whether refusing to enforce waivers" of a claim that is "technically denominated" as representative "will deprive parties of the benefits of arbitration." *Id.* at 436.

Our decision in *Sakkab* is squarely on point. The *McGill* rule, like the *Iskanian* rule, does not "deprive parties of the benefits of arbitration." *See id.* This characteristic distinguishes both rules from the *Discover Bank* rule barring the waiver of class actions at issue in *Concepcion*. A major concern in *Concepcion* was that compelling classwide arbitration "*requires* procedural formality," and, in so doing, "makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Concepcion*, 563 U.S. at 348–49. By contrast, neither state law nor constitutional due process gives rise to, let alone "*requires*[,] procedural formality" in the arbitration of public injunctive relief.

Public injunctive relief under the Karnette Act, UCL, and CLRA does not require formalities inconsistent with arbitration. In *McGill*, the California Supreme Court expressly held that claims for public injunctive relief need not comply with state-law class procedures. *McGill*, 393 P.3d at 93. We are bound by this ruling. *See Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002). Nor does constitutional due process require unusual procedures inconsistent with arbitration. In *Sakkab*, we held that the due process rights of absent employees are not implicated by the arbitration of a PAGA claim because the claim is brought on behalf of the state, which is the "real part[y] in interest." *Sakkab*, 803 F.3d at 436. The small portion of a PAGA penalty distributed to employees is incidental to the statute's public enforcement purpose and effect. Similarly, here,

public injunction claims are brought for the benefit of the general public, not on behalf of specific absent parties.

Crucially, arbitration of a public injunction does not interfere with the bilateral nature of a typical consumer arbitration. The rules struck down in *Concepcion* and *Epic Systems* "impermissibly disfavor[ed] arbitration" because they rendered an agreement "unenforceable just because it require[d] bilateral arbitration." *Epic Systems*, 138 S. Ct. at 1623 (emphasis removed). The *McGill* rule does no such thing. The *McGill* rule leaves undisturbed an agreement that both requires bilateral arbitration and permits public injunctive claims. A plaintiff requesting a public injunction files the lawsuit "on his or her own behalf" and retains sole control over the suit. *McGill*, 393 P.3d at 92. Nothing in the *McGill* rule requires a "switch from bilateral . . . arbitration" to a multi-party action. *Concepcion*, 563 U.S. at 348.

It is possible that arbitration of a public injunction will in some cases be more complex than arbitration of a conventional individual action or a representative PAGA claim. But as with PAGA actions, the complexity involved in resolving a request for a public injunction "flows from the substance of the claim itself, rather than any procedures required to adjudicate it (as with class actions)." *Sakkab*, 803 F.3d at 438. The distinction between substantive and procedural complexity is relevant to the preemption analysis because the Court found in *Concepcion* that classwide arbitration's "procedural formality" frustrated the FAA's objective of ensuring speedy, cost-effective, and informal arbitration. *Concepcion*, 563 U.S. at 348–49. But "potential complexity should not suffice to ward off arbitration" of substantively complex claims. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 633 (1985). A

state-law rule that preserves the right to pursue a substantively complex claim in arbitration without mandating procedural complexity does not frustrate the FAA's objectives.

One theoretical distinction between arbitrating PAGA claims and arbitrating public injunctive claims is the potential for multiple injunctions against the same defendant imposing conflicting obligations, a scenario without an obvious analogue in the PAGA context. These concerns are conjectural and unpersuasive. We are unaware of a *single* such conflict in the decades public injunctive relief has been available in California courts. Even assuming such conflicts are (for some unidentified reason) imminent in the arbitral forum, the defendant can always inform the arbitrator of its existing obligations. We see no reason to believe that an arbitrator would then impose an irreconcilable obligation on the defendant. Nor would complex procedures be needed to avoid such conflicts: the defendant need simply tell the arbitrator. If the initial proceedings were confidential, the defendant could, to the extent necessary, obtain permission from the earlier arbitrator to make such a limited disclosure.

Ongoing injunctions sometimes need monitoring or modification. The need for monitoring and modification is inherent in all injunctive relief, public and private, and such monitoring and modification is not incompatible with informal arbitration. Arbitrators have long had the authority and ability to address requests for injunctive relief within bilateral arbitration. *See* AAA Commercial Arbitration Rule 47(a) ("The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties[.]"). We are not concerned that arbitrating public injunctions would produce

procedural complexities not already common to the arbitration of private injunctions.

Nor are public injunctions unique because of the need to weigh the public interest in deciding whether to grant an injunction. Judges and arbitrators routinely consider the public interest when issuing private injunctions. *See, e.g.*, *Sw. Voter Reg. Educ. Project v. Shelley*, 344 F.3d 914, 917 (9th Cir. 2003) (en banc) ("The district court must also consider whether the public interest favors issuance of the injunction"). Injunctive relief in antitrust actions, for example, requires "reconciliation between the public interest and private needs as well as between competing private claims." *See California v. Am. Stores Co.*, 495 U.S. 271, 284 (1990).

Rent-A-Center's contention that arbitration of a public injunction requires expansive discovery and presentation of class-wide evidence is mistaken. We are unconvinced by Rent-A-Center's suggestion that under *Cisneros v. U.D. Registry, Inc.*, 46 Cal. Rptr. 2d 233 (Ct. App. 1995), a public injunction claim "demands class-wide evidence." That case merely stands for the unremarkable notion that evidence of "similar practices involving other members of the public who are not parties to the action" may be relevant to and admissible to support a public injunction claim. *Id.* at 244. The Court of Appeal said nothing about the discoverability of such evidence, nor did it limit parties' ability to agree ex ante on the scope of discovery.

The parties remain free to reasonably limit by ex ante agreement discovery and presentation of evidence, as they may with any other arbitrable claim. Rent-A-Center chose to omit any such provision from the 2015 air conditioner

agreement, and, in the absence of such an agreement, the breadth of discovery in a public injunctive action, as in a PAGA action, "flows from the substance of the claim itself, rather than any procedures required to adjudicate it." *Sakkab*, 803 F.3d at 438. Such is the case in the antitrust context as well, and, as we know, antitrust claims are unquestionably arbitrable. *See Mitsubishi Motors Corp.*, 473 U.S. at 628–40.

Finally, a public injunction may involve high stakes and could affect a lucrative business practice. But so could a private injunctive, declaratory, or damages action. As we explained in *Sakkab*, "the FAA would not preempt a state statutory cause of action that imposed substantial liability merely because the action's high stakes would arguably make it poorly suited to arbitration." *Sakkab*, 803 F.3d at 437 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). Where a public injunction does not interfere with the informal, bilateral nature of traditional consumer arbitration, high stakes alone do not warrant FAA preemption.

As we recognized in *Sakkab*, arbitration is "[i]n many ways . . . well suited to resolving complex disputes, provided that the parties are free to decide how the arbitration will be conducted." *Id.* at 438. Like the *Iskanian* rule, the *McGill* rule does not "mandate procedures that interfere with arbitration." *See id.* Arbitration of public injunctive relief accordingly need not "sacrifice[] the principal advantage of arbitration—its informality." *See Concepcion*, 563 U.S. at 348. We hold that the FAA does not preempt the *McGill* rule.

IV.  Construction of the Arbitration Agreement

Having concluded that the FAA does not preempt the *McGill* rule, we now turn to the 2015 air conditioner agreement itself to determine its scope and effect.  Rent-A-Center contends that the agreement requires Blair to submit her Karnette Act, UCL, and CLRA claims to arbitration for determination of liability.  According to Rent-A-Center, only after the arbitrator has determined liability can Blair go to court to seek the remedy of a public injunction.[3]  We disagree.

The severance clause in the 2015 agreement instructs us to sever Blair's Karnette Act, UCL, and CLRA claims from the scope of arbitration, and to permit such claims to be brought in court.  The clause reads:

> If there is a final judicial determination that applicable law precludes enforcement of this Paragraph's limitations as to a particular claim for relief, then that claim (and only that claim) must be severed from the arbitration and may be brought in court.

The severance clause is triggered by the *McGill* rule. Paragraph (D) of the agreement prohibits the arbitrator from awarding "relief that would affect RAC account holders other than you," and eliminates any "right or authority for any

---

[3] Rent-A-Center alternatively argues that the *McGill* rule does not apply because Blair's requested relief does not amount to a public injunction.  Not so.  Blair seeks to enjoin future violations of California's consumer protection statutes, relief oriented to and for the benefit of the general public.

dispute to be brought, heard, or arbitrated as a class, collective, mass, private attorney general, or representative action." Paragraph (D) thus precludes the arbitrator from awarding public injunctive relief. Paragraph (B) of the agreement permits Rent-A-Center to demand that all disputes be resolved in arbitration, which precludes Blair from seeking public injunctive relief in court. Read together, Paragraphs (B) and (D) waive Blair's right to seek a public injunction "in any forum." *McGill*, 393 P.3d at 87. The *McGill* rule is "applicable law" that "precludes enforcement" of Paragraph (D)'s limitations as to Blair's Karnette Act, UCL, and CLRA claims.

Rent-A-Center contends that the severance clause carves out only the potential public injunctive remedy for these causes of action, requiring the arbitrator to adjudicate liability first. Rent-A-Center reads "claim for relief" in the severance clause to refer only to a particular remedy, not to the underlying claim. The district court found Rent-A-Center's reading "unnatural and unpersuasive," and we agree. Parties are welcome to agree to split decisionmaking between a court and an arbitrator in this manner. *Cf. Ferguson*, 733 F.3d at 937. But they did not do so here.

The severance clause refers to "a particular claim for relief," but it then goes on to require, a few words later in the same sentence, severance of "that claim" from the arbitration in order to allow it to "be brought in court." A "claim for relief," as that term is ordinarily used, is synonymous with "claim" or "cause of action." *See, e.g.*, Fed. R. Civ. P. 8(a) (interchangeably using "claim" and "claim for relief," and using "demand for relief sought" to refer specifically to requested remedy); *Claim*, Black's Law Dictionary (10th ed. 2014) (noting that a "claim" is "[a]lso termed claim for

relief"); *Claim for relief*, Black's Law Dictionary (10th ed. 2014) (referencing definition for "claim"); *In re Ocwen Loan Serv., LLC Mortg. Serv. Litig.*, 491 F.3d 638, 646 (7th Cir. 2007) ("The eighth claim is purely remedial; it seeks injunctive relief. Of course it is not a claim, that is, a cause of action, and should not have been labeled as such . . . ."); *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1031 (N.D. Cal. 2013) ("[E]quitable relief is not a claim for relief but rather only a remedy."). We read the clause, as did the district court, to provide that the entire claim be severed for judicial determination.

## V. Other Issues

The district court refused to impose either a mandatory or discretionary stay on the non-arbitrable claims pending arbitration of Blair's usury claim. We have jurisdiction under 9 U.S.C. § 16(a)(1)(A) to review the denial of a mandatory stay, which is a question of law that we review de novo. Under 9 U.S.C. § 3, a district court must stay proceedings for claims and issues "referable to arbitration" pending resolution of the arbitration. *See Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). Only the usury claim was "referable to arbitration," so Rent-A-Center was not entitled to a stay under § 3 for any of the other claims. *See id.* We affirm the district court's ruling.

We lack jurisdiction to review the district court's denial of a discretionary stay. *See Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 986 (9th Cir. 2017). Our appellate jurisdiction under the FAA over interlocutory appeals is limited to the orders listed in 9 U.S.C. § 16(a)(1). *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 982 (9th Cir. 2017). Relevant here, appellate jurisdiction extends

to orders "refusing a stay of any action under section 3 of this title." 9 U.S.C. § 16(a)(1)(A). A discretionary stay is based on the district court's inherent authority to manage its docket and is not "a stay . . . under section 3" of the FAA. *See Portland Gen. Elec. Co.*, 862 F.3d at 984. The exceptions that, at times, justify extension of appellate jurisdiction over the *imposition* of a discretionary stay do not apply to the *denial* of a stay. *Cf. Dependable Highways Exp. Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1063–64 (9th Cir. 2007).

We also lack jurisdiction to review the district court's decision to defer ruling on Rent-A-Center's motion to strike because it is a non-final order not covered by one of the categories set forth in 9 U.S.C. § 16(a)(1)(A). *See Kum Tat Ltd.*, 845 F.3d at 982.

## Conclusion

The district court's denials of Rent-A-Center's motion to compel arbitration and motion for a mandatory stay are **AFFIRMED**.

Rent-A-Center's appeals of the district court's denial of a discretionary stay and deferral on the motion to strike class claims are **DISMISSED** for lack of jurisdiction.