**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| RACHEL STOVER, on behalf of herself and others similarly situated, *Plaintiff-Appellant*, <br><br> v. <br><br> EXPERIAN HOLDINGS, INC.; EXPERIAN INFORMATION SOLUTIONS, INC.; CONSUMERINFO.COM, INC., DBA Experian Services, *Defendants-Appellees.* | No. 19-55204 <br><br> D.C. No. 8:18-cv-00826-CJC-DFM <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted October 9, 2020
Pasadena, California

Filed October 21, 2020

Before: MILAN D. SMITH, JR. and JOHN B. OWENS,
Circuit Judges, and KATHLEEN CARDONE,[*]
District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable Kathleen Cardone, United States District Judge for the Western District of Texas, sitting by designation.

**SUMMARY**[**]

**Arbitration**

The panel affirmed the district court's order compelling arbitration in an action seeking damages and injunctive relief under the Fair Credit Reporting Act and state law based on plaintiff's purchase of the Experian Credit Score subscription service in 2014.

Plaintiff expressly agreed in 2014 to the Experian terms of use, which included an arbitration provision and a "change-of-terms" provision, specifying that she would be bound to future versions of the contract by continuing to use Experian products, which, under the terms of the contract, included accessing Experian's website. The 2018 version of the terms of use exempted some types of claims from binding arbitration. In 2018, plaintiff accessed Experian's website, but she did not allege that she received notice of the terms then in effect.

The panel held that plaintiff's claims were arbitrable under the 2014 terms of the contract to which she assented. It held that in order to bind parties to new terms pursuant to a change-of-terms provision, consistent with basic principles of contract law, both parties must have notice that the terms have changed and an opportunity to review the changes. Because plaintiff did not allege facts sufficient to conclude that the 2018 terms formed a valid contract, the 2018 terms did not form a valid contract.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel further held that the parties' contract permitted judicial resolution of claims for public injunctive relief, but the plaintiff did not allege Article III standing to bring such a claim.  Accordingly, the *McGill* rule, providing that a contract that purports to waive a person's right to seek public injunctive relief in court is unenforceable under California law, did not excuse her from binding arbitration of her claims against Experian.

## COUNSEL

Joseph C. Bourne (argued) and Melissa S. Weiner, Pearson Simon & Warshaw LLP, Minneapolis, Minnesota; Sue J. Nam and Michael R. Reese, Reese LLP, New York, New York; George V. Granade, Reese LLP, Los Angeles, California; Matthew D. Schultz, Levin Papantonio, Thomas, Mitchell, Rafferty & Proctor P.A., Pensacola, Florida; for Plaintiff-Appellant.

Meir Feder (argued), Jones Day, New York, New York; Richard Grabowski and Edward Chang, Jones Day, Irvine, California; for Defendants-Appellees.

**OPINION**

M. SMITH, Circuit Judge:

Rachel Stover appeals the district court's order compelling arbitration of her claims based on her purchase of the Experian Credit Score subscription service in 2014. Two versions of the Experian terms of use are at issue here: the version to which Stover expressly agreed in 2014, and the 2018 version, which exempted some types of claims from binding arbitration. The 2014 terms included a "change-of-terms" provision, specifying that Stover would be bound to future versions of the contract by continuing to access Experian products. In 2018, Stover accessed Experian's website, but does not allege that she received notice of the terms then in effect. This case therefore requires us to address whether a mere website visit after the end of a business relationship is enough to bind parties to changed terms in a contract pursuant to a change-of-terms provision in the original contract. We hold that it is not.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2014, Rachel Stover purchased a service called "Experian Credit Score," which provides subscribers with a credit score. She alleges that Experian fraudulently marketed this credit score as information that lenders review when determining consumers' creditworthiness. Stover claims that the score was based on a formula that few, if any, lenders used, rendering it essentially useless for a consumer seeking to monitor their credit or determine their own creditworthiness. When Stover purchased the Experian credit score subscription, she assented to the terms and conditions (the 2014 terms). The 2014 terms stated that all claims arising out of the transaction were subject to arbitration "to the fullest extent permitted by law," and that

Stover was waiving her right to be part of a class action. The 2014 terms also contained a change-of-terms provision stating that "[e]ach time" Stover "accessed . . . the . . . Product Website," she would be manifesting assent to "the then current" terms of the agreement.

Stover cancelled her subscription to the Experian credit score service in July 2014. She accessed the Experian website again in 2018, the day before she filed her complaint in this case. At the time Stover accessed the Experian website in 2018, the arbitration provision of the terms had changed to accommodate a carve-out for disputes "arising out of or relating to the Fair Credit Reporting Act (FCRA) or other state or federal laws relating to the information contained in your consumer disclosure or report, including but not limited to claims for alleged inaccuracies in your credit report or the information in your credit file." All other claims remained subject to arbitration "to the fullest extent permitted by law."

Stover brought a putative class action complaint in the federal district court for the Central District of California seeking damages and injunctive relief. Her complaint alleged violation of 15 U.S.C. § 1681g(f)(7)(A), the Fair Credit Reporting Act provision requiring consumer reporting agencies that provide credit scores to "supply the consumer with a credit score that . . . assists the consumer in understanding the credit scoring assessment of the credit behavior of the consumer[.]" 15 U.S.C. § 1681g(f)(7)(A). Stover's complaint also alleged a violation of the California and Florida Unfair Competition Laws based on Experian's allegedly unfair and deceptive practices in marketing the Experian Credit Score. Experian moved to compel arbitration of Stover's claims.

The district court granted the motion.  In doing so, the court held that the 2018 terms applied because of the plain language of the 2014 terms that assumed assent to new terms based on the consumer's use of the "Product Website."  The district court further held that Stover's claims were not within the carve-out from arbitration because the claims did not arise out of "information contained in [her] consumer disclosure or report" using the definition of those terms found in the FCRA.  Finally, the district court concluded that Stover's claims were not exempt from arbitration based on *McGill v. Citibank, N.A.*, 393 P.3d 85, 94 (Cal. 2017).  Under *McGill*, "a provision in *any* contract . . . that purports to waive, in all fora, the statutory right to seek public injunctive relief under the [California Unfair Competition Law (UCL)] . . . is invalid and unenforceable under California law." 393 P.3d at 94.  The district court reasoned that *McGill* did not render the contract unenforceable because Stover was not seeking public injunctive relief.

On appeal, Experian disagrees with the district court's decision to enforce the 2018 terms.  Experian argues that a "mere website visit" after the parties terminated their business relationship is not enough to "activate" a change in terms.  This is because Stover had no opportunity to review the new terms before visiting the website and becoming bound by them.

For her part, Stover contends that the district court did not err by holding that the 2018 terms governed the dispute. In Stover's view, though, the district court's error was in compelling arbitration in spite of the *McGill* rule, both because the agreement purports to prohibit public injunctive relief (and is therefore facially unenforceable), and because Stover specifically seeks public injunctive relief.

## STANDARD OF REVIEW

"The district court's decision to grant or deny a motion to compel arbitration is reviewed de novo." *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004). "This court also reviews the validity and scope of an arbitration clause *de novo* and the factual findings underlying the district court's decision for clear error." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564 (9th Cir. 2014) (internal quotation marks and alteration omitted).

## ANALYSIS

### A.

As an issue of first impression in our circuit, we are asked whether a single website visit four years after assent to a contract containing a change-of-terms provision is enough to bind the parties to terms in the then-current version of the contract of which the visitor is unaware. We answer in the negative.

First, by way of background:

> Contracts formed on the Internet come primarily in two flavors: "clickwrap" (or "click-through") agreements, in which website users are required to click on an "I agree" box after being presented with a list of terms and conditions of use; and "browsewrap" agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen.

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014).  The contract at issue in this case is a hybrid: in 2014, Stover assented to a clickwrap agreement; in 2018, the new terms allegedly altered the 2014 contract as a browsewrap agreement.

In *Douglas v. United States District Court for the Central District of California*,  we held that changed terms were unenforceable due to lack of notice: even if the plaintiff had visited the website where the new contract was posted, "he would have had no reason to look at the contract posted there," because "[p]arties to a contract have no obligation to check the terms on a periodic basis to learn whether they have been changed by the other side."  495 F.3d 1062, 1066 (9th Cir. 2007) (per curiam).

Although the 2014 terms contained a change-of-terms provision, nothing in *Douglas* suggests that mere inquiry notice of changed terms is enough to bind the parties to them. Stover assented only once to the terms of a single contract that Experian later modified without providing notice.  Just as in *Douglas*, Stover had no obligation to investigate whether Experian issued new terms without providing notice to her that it had done so.  Indeed, the opposite rule would lead to absurd results: contract drafters who included a change-of-terms provision would be permitted to bind individuals daily, or even hourly, to subsequent changes in the terms.   The absence of limits on the frequency or substance of changes in terms subverts the basic rule of contract law that "[a] contract exists where the parties assent to the same thing in the same sense, so that their minds meet."   17A Am. Jur. 2d Contracts § 30 (August 2020 Update) (footnotes omitted).  We therefore hold that in order for changes in terms to be binding pursuant to a change-of-terms provision in the original contract, both parties to the

contract—not just the drafting party—must have notice of the change in contract terms.

As the party alleging the existence of a contract, Stover has the burden to prove each element of a valid contract—including mutual assent. *See* 81A C.J.S. Specific Performance § 132 (September 2020 update). *Douglas* and *Nguyen* dictate that notice—actual, inquiry, or constructive—is the touchstone for assent to a contract, and the resulting enforceability of changed terms in an agreement. *See Douglas*, 495 F.3d at 1066; *Nguyen*, 763 F.3d at 1177. The record does not indicate whether Stover had notice of the changed terms when she visited Experian's website in 2018, nor does Stover's complaint include any allegations related to notice. Stover therefore has not met her burden to prove that the 2018 terms constituted a valid contract between the parties, so the 2014 terms apply.

## B.

The 2014 terms dictate that all disputes between the parties must be submitted to arbitration to the fullest extent allowed by law. A contract that purports to waive a person's right to seek public injunctive relief in court is unenforceable under California law. *McGill*, 393 P.3d at 93–94. Consequently, we must consider whether the 2014 terms are unenforceable, either because they prohibit judicial resolution of all claims for public injunctive relief, or because they would close the courthouse doors to Stover's specific claim of this nature.

"[P]ublic injunctions benefit the public directly by the elimination of deceptive practices, but do not otherwise benefit the plaintiff, who has already been injured, allegedly, by such practices and is aware of them." *Blair v. Rent-A-*

*Center, Inc.*, 928 F.3d 819, 824 (9th Cir. 2019) (internal quotation marks and alteration omitted). In *Blair*, after concluding that the contract purported to "waive [the plaintiff's] right to seek a public injunction 'in any forum,'" we—without an individualized assessment of the plaintiff's claims—held that the contract was unenforceable. *Id.* at 831 (quoting *McGill*, 393 P.3d at 87). Stover characterizes *Blair* as standing for the proposition that no other analysis is necessary in order to exempt a plaintiff from binding arbitration once a court has determined that the contract would prohibit judicial resolution of a claim for public injunctive relief.

However, to seek public injunctive relief in federal court, Stover must also allege that she has Article III standing. "[A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase[.]" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). *Davidson* further states:

> Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false

> advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.

*Id.* at 969–70 (citation and footnote omitted).

Stover's arguments that the agreement is unenforceable on its face and as applied to the specific relief she seeks are meritless. First, the arbitration agreement does not flatly prohibit a plaintiff seeking public injunctive relief in court. Instead, the agreement subjects to arbitration all disputes to the fullest extent allowed by law—which would presumably exclude claims for public injunctive relief in California. This means that the arbitration provision is not facially unenforceable under *Blair*. Furthermore, Stover's complaint does not allege the threat of future harm that *Davidson* held is required for Article III standing in a case seeking public injunctive relief. Because Stover has not done so, the *McGill* rule does not preclude arbitration of her California UCL claim.

Stover's reply brief raises, for the first time, a request to amend her complaint to include allegations sufficient for Article III standing. Because Stover did not request leave to amend her complaint in the district court, it would not be appropriate for this court to grant it. *Alaska v. United States*, 201 F.3d 1154, 1163–64 (9th Cir. 2000) ("Where a party does not ask the district court for leave to amend, the request on appeal to remand with instructions to permit amendment comes too late." (internal quotation marks and alteration omitted)). In any event, even counsel's representations in the reply brief as to what Stover could allege in an amended complaint would not be sufficient to meet the requirements set forth in *Davidson*. Stover's brief says only that she will be unable "to purchase Experian credit scores in the future

because she will not know whether they are or are not derived from a credit scoring model that is widely used by lenders."  But *Davidson* also requires that the plaintiff *desire* to purchase the product—even Stover's belated request for amendment in the reply brief does not indicate that she could amend the complaint to allege the necessary facts.  The contract between the parties is not unenforceable on *McGill* grounds.

## CONCLUSION

We hold that Stover's claims are arbitrable under the 2014 terms of the contract to which she assented.  In order to bind parties to new terms pursuant to a change-of-terms provision, consistent with basic principles of contract law, both parties must have notice that the terms have changed and an opportunity to review the changes.  Because Stover has not alleged that she had such an opportunity, the 2018 terms did not form a valid contract.  Furthermore, the contract permits judicial resolution of claims for public injunctive relief, but Stover has not alleged Article III standing for such a claim.  Thus, the *McGill* rule does not excuse Stover from binding arbitration of her claims against Experian.  The judgment of the district court is **AFFIRMED**.