**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

SEP 11 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



DEJA NAIR,

              Plaintiff-Appellee,

  v.

MEDLINE INDUSTRIES, LP, FKA
Medline Industries, Inc.; MEDLINE
INDUSTRIES HOLDINGS, LP, A Delaware
Limited Partnership,

              Defendants-Appellants.

No.   23-15582

D.C. No.
2:22-cv-00331-DAD-JDP

MEMORANDUM*

Appeal from the United States District Court
for the Eastern District of California
Dale A. Drozd, District Judge, Presiding

Argued and Submitted July 29, 2024
San Francisco, California

Before: R. NELSON, FORREST, and SANCHEZ, Circuit Judges.
Concurrence by Judge R. NELSON.

     Medline Industries, Inc., Medline Industries Holdings, LP, and Medline

Industries, LP (collectively, Medline) appeal the district court's order denying its

motion to compel arbitration of Deja Nair's individual employment claims and to

dismiss Nair's non-individual claims related to her position as a Warehouse

---

     *     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Operator at Medline's warehouse in Tracy, California. We review the district court's decision to grant or deny a motion to compel arbitration de novo. *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1085 (9th Cir. 2020). We review "the validity and scope of an arbitration clause *de novo* and the factual findings underlying the district court's decision for clear error." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564 (9th Cir. 2014) (internal quotation marks and citation omitted). We have jurisdiction under 9 U.S.C. § 16(a)(1)(B), and we affirm.

Under the Federal Arbitration Act (FAA), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. However, § 1 exempts from the FAA employment contracts of "seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." *Id*. § 1. To determine if a contract is exempt from arbitration under § 1, we first define the "class of workers" to which the plaintiff belongs, and then determine if that class of workers is engaged in foreign or interstate commerce. *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022); *see Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152, 1159–60 (9th Cir. 2024) (describing and applying the two-step analysis). The Supreme Court recently clarified that Medline itself does not need to be in the transportation industry for the transportation exemption to apply.

2

*Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 252 (2024).  Rather, Nair is "a member of a 'class of workers' based on what she does at [Medline], not what [Medline] does generally."  *Saxon*, 596 U.S. at 456.

The district court did not err in finding that Nair is exempt under § 1 of the FAA.  Nair belongs to a class of workers who frequently package, move, load, unload, and ship medical supplies at Medline's warehouses for delivery to interstate customers.  *See id*. at 455–59.  Although the district court should not have considered the "Dealer Drop Ship Program" in the absence of any evidence that the program existed at the time of Nair's employment, there was more than sufficient evidence elsewhere in the record to support the district court's finding that Nair belongs to a class of warehouse operator workers who were engaged in interstate commerce.

Nair alleged in her declaration that she worked every day in the "shipping dock" where she "spent 100% of [her] time stacking pallets and wrapping them in saran wrap to load onto trucks."  She alleged that she loaded the delivery trucks every day with pallets that were prepared "for shipping to destinations in and outside of California," including to Reno, Nevada.  On one occasion, she spoke to a truck driver who informed Nair that he traveled daily from the Tracy, California warehouse to Reno, Nevada to make his Medline deliveries.  As a new employee, Nair watched "training videos [that] explained how [Medline] ships medical

3

supplies throughout the country, and how [Medline] expected warehouse operators like [Nair] to ship and pack medical supplies for transport to various destinations throughout the United States." The training showed a map of the United States indicating several of Medline's distribution centers are located outside of California.

Medline argues that Nair has not proffered sufficient evidence that she handled goods that moved in interstate commerce, but it does not contest Nair's description of her role at the company or offer evidence to rebut it. *See Lopez v. Aircraft Serv. Int'l, Inc.*, 107 F.4th 1096, 1098 (9th Cir. July 19, 2024) (noting that the "district court observed that [the employer] did not contest [the employee's] description of his work [as an airplane fuel technician], or offer additional evidence about the nature of that work" as stated in the employee's declaration) (internal quotation marks omitted). On the contrary, Medline acknowledges that it manufactures only around 80,000 of the 500,000 products it provides to its customers. Before the district court, Medline conceded that it "provides its clients with medical supplies, equipment, and health services distributed all over the nation and internationally." Medline acknowledged that Warehouse Operators like Nair "might load pallets onto a trailer for shipment or unload pallets from a trailer with incoming merchandise." In its totality, this evidence is sufficient to indicate

4

that Nair "play[ed] a tangible and meaningful role in [the] progress [of Medline's goods] through the channels of interstate commerce." *Ortiz*, 95 F.4th at 1160.

Because she packaged and loaded goods that traveled in interstate commerce, Nair falls within a class of worker that "at least play[s] a direct and necessary role in the free flow of goods across borders." *Saxon*, 596 U.S. at 458 (internal quotation marks and citation omitted). Accordingly, the district court did not err in finding that Nair is part of a class of class of workers engaged in interstate commerce under § 1 of the FAA, and properly denied Medline's motion to compel arbitration.[1]

**AFFIRMED.**

---

[1] Because the transportation worker exception applies, we do not address Medline's remaining arguments on appeal that (1) any remaining issues regarding the enforceability of the arbitration provision, other than the transportation worker exemption, must be decided by the arbitrator pursuant to the agreement's delegation clause, (2) the class action waiver of the Arbitration Provision is enforceable, and (3) Nair's representative Private Attorneys General Act (PAGA) claim should be stayed pending arbitration of Nair's individual claims.

*Nair v. Medline Industries, L.P.*, No. 23-15582

R. Nelson, Circuit Judge, concurring:

I write separately to emphasize that we should exercise caution before extending some of our precedent. In prior cases, we have considered whether certain workers are part of an unbroken "stream of commerce" in deciding whether they fall within the transportation-worker exemption of the Federal Arbitration Act, 9 U.S.C. § 1. *See Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 916 (9th Cir. 2020) (citation omitted). To conduct this stream-of-commerce inquiry, we considered myriad factors, including the perceived "practical, economic continuity in the generation of goods and services," *id.* at 913 (same), as well as considerations such as where goods "come to rest," *id.* at 916.

These judicially created tests risk taking on a life of their own. At bottom, courts are easily lured by the flexibility of multi-part judicial tests and stray from the predictable rigidity of the statutory text. Going forward, we should take great care to reorient our legal analysis of the transportation-worker exemption by hewing to the statutory text, applying the meaningful-variation and *ejusdem generis* canons to determine whether a worker "play[s] a direct and 'necessary role in the free flow of goods' across borders." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022) (quoting *Circuit City Stores v. Adams*, 532 U.S. 105, 121 (2001)). I concur because the majority here faithfully applies this statutory analysis.

1