Filed 5/25/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BRANDON JACK, et al.,<br><br>       Plaintiffs and Respondents,<br>v.<br>RING LLC,<br><br>       Defendant and Appellant. | A165103, A165386<br><br>(San Francisco County<br>Super. Ct. No. CGC-20-588258) |

Ring LLC (Ring) manufactures and sells home security and smart home devices including video doorbells, security cameras, and alarms. Brandon Jack and Jean Alda (together, plaintiffs) purchased video doorbell and security camera products from Ring and subsequently filed a class action complaint against Ring asserting claims under various consumer protection statutes. In their lawsuit, plaintiffs seek injunctive relief requiring Ring to prominently disclose to consumers certain information about its products and services.

Ring moved to compel arbitration based on an arbitration provision in its terms of service. Opposing the motion, plaintiffs did not dispute that they agreed to Ring's terms of service, but they argued the applicable arbitration provision violates the California Supreme Court's holding in *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 961 (*McGill*) that a predispute arbitration agreement is invalid and unenforceable under state law insofar as

1

it purports to waive a party's statutory right to seek public injunctive relief. The trial court denied the motion to compel arbitration, and Ring appeals.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Plaintiffs' Lawsuit*

Plaintiffs filed their lawsuit on November 19, 2020. They alleged Ring did not inform them "at the time of purchase that the video recording, playback, and snapshot features[,] which were key components of these products[,] would only operate if Plaintiffs paid an additional fee of $3 per month (or $30 per year) per device for a . . . 'Protect Plan.' " They alleged Ring's failure to clearly disclose the necessity of the Protect Plan before purchase constitutes a deceptive and misleading practice, and brought three causes of action under (1) the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.; CLRA), (2) the false advertising law (Bus. & Prof. Code, § 17500 et seq.), and (3) the Unfair Competition Law (*id.*, § 17200 et seq.; UCL). Plaintiffs sought "a public injunction" requiring Ring to disclose on its website and on the packaging for its products that many features are not available unless the purchaser also buys a plan from Ring for an additional fee of $3 per month or $30 per year, per device.

*Ring's Motion to Compel Arbitration*

Ring filed a motion to compel arbitration and stay the action. Ring submitted 10 versions of its terms of service—attached as Exhibits B through K to John Modestine's supporting declaration—without identifying which version or versions it believed controlled. However, in describing the arbitration provision, Ring cited two versions of its terms of service: (1) Exhibit C to Modestine's declaration, which appeared on Ring's website August 18 to October 2, 2017, and was, according to Ring, in effect "[a]t the

2

time of Mr. Alda's purchase" and (2) Exhibit G, which appeared on Ring's website August 1, 2018, to October 23, 2019, and was in effect "at the time of purchase for Mr. Jack."

These versions of Ring's terms of service provide, "You and Ring agree that any dispute, controversy, or claim arising out of, or relating to your use of the services and or products, to this agreement, or to the content, any relationship between us and/or any recording on the services and/or products shall be resolved only by final and binding, bilateral arbitration" except that (1) "you" [i.e., customers] may bring claims that qualify for its jurisdiction in small claims court and (2) either party may seek injunctive or other equitable relief in state or federal court in Los Angeles County to protect that party's intellectual property rights. (Capitalization omitted.)[1]

Ring asserted the arbitration provision includes an express delegation clause delegating issues of arbitrability to the arbitrator, again citing Exhibits C and G. These versions of the arbitration provision specify that "the arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of these Terms, including, but not limited to any claim that all or any part of these Terms are void or voidable, or whether a claim is subject to arbitration."[2]

---

[1] Ring noted that its terms of service had been "updated since the relevant time period, but the quoted language concerning arbitration has not materially changed during this time period," citing all 10 versions of the terms of service attached to Modestine's declaration. We further observe that the two most recent versions of the terms of service provided by Ring, Exhibits J and K, contain the same language except that "and or" has been replaced by "and/or."

[2] The same language is found in Exhibits J and K.

3

Opposing the motion, plaintiffs pointed out that Ring never identified which version of the terms of service it was attempting to enforce, and they urged that Ring's vagueness "waived its right and obligation to identify which version governs." In any event, plaintiffs argued that each of the 10 versions "(1) specifies that a court decides the enforceability of the prohibition of public injunctive relief, (2) violates *McGill* due to the prohibition of public injunctive relief; and (3) contains a poison pill which states that, in the event of a *McGill* violation, the entire claim or set of claims is to be tried in a court." (Bolding and italics omitted.)

Plaintiffs took the position that the terms of service in effect at the time their lawsuit was filed, Exhibit J to Modestine's Declaration, governed.[3]

Plaintiffs argued that, despite the delegation clause relied on by Ring, the trial court could decide whether the arbitration provision was enforceable under *McGill* because the provision includes "a carve-out" from the delegation clause "for *McGill*-style issues." They quoted the following language (citing Exhibit J): "We each agree that any dispute resolution

---

[3] Plaintiffs argued the version of the terms of service shown in Exhibit J applies to their current dispute with Ring because, "[w]ith each new version of the Terms, Ring purported to effect a novation that extinguished the prior version" (citing Civ. Code, § 1530), and, thus, "Exhibit J superseded Exhibit I, which superseded Exhibit H, etc." But they posited Exhibit K (which appeared on Ring's website starting on December 8, 2020) could not apply to their current dispute because Ring could not unilaterally alter the terms of the arbitration provision *after* plaintiffs filed their lawsuit in November 2020, citing *In re Currency Conversion Fee Antitrust Litigation* (S.D.N.Y. 2005) 361 F.Supp.2d 237, 253 ["when a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization"] and *Balasanyan v. Nordstrom, Inc.* (S.D.Cal. Mar. 8, 2012) 2012 WL 760566, * 4 [invalidating a new arbitration agreement because it was an "improper attempt to alter the pre-existing arbitration agreement with putative class members during litigation"].)

4

proceedings will be conducted only on an individual basis and not in a class, representative or private attorney general action. Further, unless both you and Ring expressly agree otherwise, the arbitrator may not consolidate more than one person's claims and may not otherwise preside over any form of a representative or class proceeding. If *a court* decides that applicable law precludes enforcement of any of this subsection's limitations as to a particular claim for relief, then that claim (and only that claim) must be severed from the arbitration and may be brought in court." (Capitalization omitted, italics added.)[4]

Plaintiffs asserted the quoted subsection of the arbitration provision "explicitly specifies that a court must decide the enforceability of this public injunctive relief prohibition." (Italics omitted.) They also called the final sentence of the quoted subsection a "poison pill," which requires, once a court finds a *McGill* violation as to a claim, that such claim be litigated in court, not in arbitration.

On the merits, plaintiffs quoted language in the arbitration provision that (1) prohibits a claimant from pursuing claims in a "private attorney general action," (2) limits the arbitrator to awarding relief "on an individual basis,"[5] and (3) provides that the arbitrator may award injunctive relief "only in favor of the individual party seeking relief and only to the extent necessary

---

[4] The same language is found in Exhibits C and G, the versions of the terms of service Ring quoted and cited in its memorandum of points and authorities supporting its motion to compel arbitration, as well as in Exhibit K.

[5] Plaintiffs quoted the following language (citing Exhibit J): "An arbitrator, however, can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of these Terms." The same language is found in Exhibits C, G, and K.

5

to provide relief warranted by that party's individual claim,"[6] and cited cases in which these types of provisions were found to void arbitration agreements under *McGill.*

In its reply, Ring argued for the first time that Exhibit K (and not Exhibits C and G, which it had cited in its memorandum of points and authority) embodied the applicable terms of service.[7]

*Requests to File Additional Briefing and Evidence Regarding Ring's Motion*

Three days before the scheduled hearing on Ring's motion to compel arbitration, plaintiffs filed an ex parte application for leave to file a sur-response. They argued Ring used its reply in support of its motion to raise new arguments and plaintiffs "wish[ed] to briefly address" these arguments. (Bolding, italics and underlining omitted.)

On the day of the hearing, Ring filed a request to supplement the record and for leave to respond to plaintiffs' ex parte application. Ring asserted that, although its "position has always been that both Plaintiffs are bound by Ring's Terms of Service dated December 8, 2020" (Exhibit K), it now had "additional facts demonstrating that [plaintiff] Jack affirmatively accepted the December 2020 Terms." Ring requested leave to respond to plaintiffs' sur-response, which Ring claimed, "improperly raises new arguments and rehashes prior arguments."

*The Trial Court's Order and Ring's Subsequent Filings*

After the scheduled hearing, the trial court issued a written order, filed March 18, 2022, denying Ring's motion to compel arbitration and denying

---

[6] Again, plaintiffs cited Exhibit J. This language is also found in Exhibits C and G but is not in Exhibit K.

[7] Ring further argued that the arbitration provision was not void under *McGill* because plaintiffs were not seeking public injunctive relief and because the arbitration provision does not prohibit public injunctive relief.

6

both parties' "last-minute" ex parte applications for leave to file supplemental briefs and to supplement the record.

On March 28, 2022, Ring filed a motion for reconsideration of the court's order denying its motion to compel arbitration. Nine days later (April 6), Ring filed a notice of appeal from the trial court's order of March 18, 2022, denying its motion to compel arbitration.

On May 24, 2022, the trial court issued an order taking Ring's motion for reconsideration off calendar. The court explained it lacked jurisdiction to reconsider its ruling on the motion to compel arbitration because Ring had appealed that ruling and the appeal was pending. Two days later (May 26), Ring filed another notice of appeal from the trial court's order of March 18, 2022, denying its motion to compel arbitration and from all other appealable rulings, including the court's order of May 24 taking Ring's motion for reconsideration off calendar.

## DISCUSSION

Ring contends the question whether the arbitration provision is valid under *McGill* must be decided by an arbitrator, not a court. Alternatively, it contends the arbitration provision is valid under *McGill* and, even if the agreement violates *McGill*, plaintiffs' claims should be split by type of remedy sought so that, to the extent plaintiffs seek relief that is not a public injunction, that part of their claims should be sent to arbitration. Ring also argues the trial court abused its discretion in denying Ring's request to supplement the record and its subsequent motion for reconsideration and urges this court to find that the December 2020 terms of service control.

A.    *Standards of Review*

"Under both federal and state law, arbitration agreements are valid and enforceable, unless they are revocable for reasons under state law that

7

would render any contract revocable." (*Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 239.)

"The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.) When the evidence is not in conflict, we review the trial court's denial of a petition to compel arbitration de novo. (*Ibid.*) When there is a dispute of fact, we review the trial court's findings of fact for substantial evidence. (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 795 (*Ajamian*).)

We review for abuse of discretion the trial court's denial of Ring's requests for leave to supplement the record and to file additional briefing. (See *Fowler v. Golden Pacific Bancorp, Inc.* (2022) 80 Cal.App.5th 205, 217 [denial of a defendant's request for additional time to file a sur-reply reviewed for abuse of discretion]; *Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 765 [refusal to consider a plaintiff's surrebuttal brief reviewed for an abuse of discretion].)

We review de novo the question whether the trial court had jurisdiction to rule on Ring's motion for reconsideration. (See *People v. Bilbrey* (2018) 25 Cal.App.5th 764, 770–771 [reviewing de novo claim that the trial court lacked jurisdiction to grant a criminal defendant's motion]; *Conservatorship of Kane* (2006) 137 Cal.App.4th 400, 405 [issues of law concerning jurisdiction are subject to de novo review].)

B.    *The Trial Court Properly Considered Plaintiffs'* McGill *Claim*

"[W]hen parties have agreed to arbitration, challenges to the validity of the underlying contract [(as opposed to challenges to the agreement to arbitrate)], including contract defenses such as fraud in the inducement or

8

illegality, are for the arbitrator to decide." (*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.* (2018) 22 Cal.App.5th 1096, 1107–1108.) "However, challenges to the validity of *the arbitration clause itself* are generally resolved by the court in the first instance." (*Id.* at p. 1108, italics added.) This is because the usual presumption is that a court, not an arbitrator, decides threshold issues of arbitrability such as whether the arbitration agreement itself is valid and enforceable. (*Ajamian*, *supra*, 203 Cal.App.4th at p. 781; *Dennison v. Rosland Capital LLC* (2020) 47 Cal.App.5th 204, 209 (*Dennison*).)

The parties may agree to delegate authority to the arbitrator to decide threshold issues, but given the contrary presumption, evidence that the parties intended such a delegation must be "clear and unmistakable" before a court will enforce a delegation provision. (*Ajamian*, *supra*, 203 Cal.App.4th at p. 781; *Dennison*, *supra*, 47 Cal.App.5th at p. 209.) "This is a 'heightened standard,' higher than the evidentiary standard applicable to other matters of interpreting an arbitration agreement." (*Ajamian*, at p. 790.)

Ring contends the trial court erred in deciding the threshold issue whether the arbitration provision is enforceable under *McGill* because the parties clearly and unmistakably delegated authority to decide this issue to the arbitrator. It relies on (1) the arbitration provision's delegation clause and (2) its reference to "JAMS Streamlined Arbitration Rules & Procedures." We are not persuaded.

1. The Delegation Clause and the "Poison Pill"

"As a general matter, where one contractual provision indicates that the enforceability of an arbitration provision is to be decided by the arbitrator, but another provision indicates that [a] *court* might also find provisions in the contract unenforceable, there is no clear and unmistakable

9

delegation of authority to the arbitrator." (*Ajamian*, *supra*, 203 Cal.App.4th at p. 792.) "Even broad arbitration clauses that *expressly* delegate the enforceability decision to arbitrators may not meet the clear and unmistakable test, where other language in the agreement creates an uncertainty in that regard." (*Ibid.*)

In *Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, for example, an agreement's delegation clause provided, " 'Any disputes concerning the interpretation or the *enforceability* of this arbitration agreement, including without limitation, its revocability or *voidability for any cause*, the scope of arbitrable issues, and any defense . . . *shall be decided by the arbitrator.*' " (*Id.* at pp. 888–889, italics added.) But the same section of the agreement included " 'a severability provision in the event that "any provision of this arbitration agreement shall be determined by the arbitrator or *by any court* to be unenforceable. . . ." ' " (*Id.* at p. 891, italics added.) The trial court found the arbitration agreement "inconsistent" and ambiguous on the question of delegation because the agreement "acknowledges the possibility that enforceability issues will be decided, not by the arbitrator, but rather by the court"; consequently, the court determined that it, and not the arbitrator, would decide the " ' "gateway" issue' " of whether the arbitration agreement was enforceable. (*Ibid.*) The Court of Appeal agreed with the trial court, reasoning: "[A]lthough one provision of the arbitration agreement stated that issues of enforceability or voidability were to be decided by the arbitrator, another provision indicated that the court might find a provision unenforceable. Thus, we conclude the arbitration agreement did not 'clearly and unmistakably' reserve to the arbitrator the issue of whether the arbitration agreement was enforceable." (*Id.* at pp. 893–894.)

Likewise, in *Pinela v. Neiman Marcus Group, Inc.* (2015) 238 Cal.App.4th 227, 240–241, an arbitration agreement provided "the arbitrator is to decide enforceability questions," but a severability provision recognized a *court* may decide the same issue; Division Four of this court found the agreement "point[ed] in two directions" and, as a result, "there [wa]s no clear and unmistakable delegation." (Accord *Najarro v. Superior Court* (2021) 70 Cal.App.5th 871, 877, 880 [where a delegation clause gave the arbitrator "exclusive power" to resolve disputes relating to "enforceability" including whether the agreement was void, but a severability clause allowed a court to determine issues such as unconscionability, there was "no clear and unmistakable delegation to the arbitrator to decide enforceability"]; *Dennison*, *supra*, 47 Cal.App.5th at pp. 209–210 [where "a contract includes a severability clause stating a court of competent jurisdiction may excise an unconscionable provision, there is no clear and unmistakable delegation to the arbitrator to decide if the arbitration agreement is unconscionable"]; *Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425, 1444–1445 [where a "delegation provision states that the arbitrator is to decide whether the Agreement is enforceable while the severability provision contemplates that a court has the same authority," "the severability provision that a *court* may decide the question of enforceability creates an ambiguity as to whether an arbitrator should decide if an arbitration contract is enforceable"]; *Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1565–1566 [where an arbitration agreement provided that any dispute relating to enforcement or validity of the agreement " 'shall be submitted to final and binding arbitration' " but a severability provision contemplated a " 'trier of fact of competent jurisdiction' " may find a provision of the agreement

unenforceable, the agreement "did not ' "clearly and unmistakably" reserve' " the threshold issue of enforceability to arbitration].)

Similarly, in this case, the arbitration provision contains a delegation clause (which is the same in Exhibits C, G, J, and K) providing the arbitrator "shall have exclusive authority to resolve all disputes" relating to the "enforceability . . . of these Terms," including "any claim that all or any part of these Terms are void or voidable." But another provision, the "poison pill," contemplates that "a court" may decide the enforceability of the subsection of the arbitration provision that requires arbitration to "be conducted only on an individual basis and not in a class, representative or private attorney general action." (Capitalization omitted.) Thus, the arbitration provision points in two directions on the question whether a court or an arbitrator is to decide the enforceability of the agreement to arbitrate, at least with respect to challenges to the "subsection's limitations as to a particular claim for relief" such as plaintiffs' claim here that the limitations are unenforceable under *McGill*. Because of this uncertainty, we cannot conclude the parties clearly and unmistakably delegated to the arbitrator exclusive authority to decide whether the arbitration provision is valid under *McGill*.[8]

Ring argues the severability clause in the arbitration provision does not create any ambiguity because the arbitration provision permits certain claims to be brought in court: customers may bring claims in small claims courts and intellectual property rights may be enforced in state or federal court. We disagree.

_____

[8] Plaintiffs argue the language of the "poison pill" is clear that a court *must* decide *McGill* issues. However, we need not decide whether the arbitration provision *requires* a court to decide challenges related to the subsection's limitations; that the language suggests a court *may* decide enforceability issues is enough to create uncertainty.

Ring's argument is premised on *Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880 (*Aanderud*), but the case is distinguishable. In *Aanderud*, a solar power purchase agreement contained an arbitration provision that permitted claims to be resolved "through binding arbitration or small claims court instead of courts of general jurisdiction." (*Id*. at pp. 885–886.) The arbitration provision delegated issues of validity and enforceability of the arbitration provision to arbitration. (*Id*. at p. 891.) A separate severability clause in the purchase agreement provided for severance of any provision of the agreement found " 'to be invalid, prohibited, or otherwise unenforceable by an arbitrator or court of competent jurisdiction.' " (*Id*. at p. 894.) The plaintiff in *Aanderud* argued the severability clause rendered the delegation clause ambiguous because it suggested a court might find the arbitration provision unenforceable. The Court of Appeal, however, found no ambiguity because there was no suggestion that a court could decide whether the arbitration provision (as opposed to any other provision of the purchase agreement) was enforceable. (*Id*. at pp. 893–894.)

The *Aanderud* court explained: "In contrast to the arbitration provision in *Baker*, the arbitration provision here expressly states that any disputes, which include those over the scope and applicability of the arbitration provision, are to be resolved through binding arbitration except those within small claims court jurisdiction. Since arbitration is not at issue in a small claims court action, *the small claims court can only find unenforceable provisions* of the [purchase agreement] *other than the arbitration provision.* Thus, when the severability clause provides for severance of any provision of the [purchase agreement] if it is 'held to be invalid, prohibited, or otherwise unenforceable by an arbitrator or court of competent jurisdiction,' the court being referred to is the small claims court, *which is not empowered to*

13

*determine the scope or applicability of the arbitration provision.*"  (*Aanderud*, *supra*, 13 Cal.App.5th at p. 894, italics added.)

In other words, in *Aanderud*, the general severability clause's reference to a "court of competent jurisdiction" did not render the delegation clause ambiguous because, first, the arbitration provision allowed certain claims to be brought in small claims court (and, therefore, "court of competent jurisdiction" referred to small claims court) and, second, although the severability clause contemplated a small claims court might find a provision of the *purchase agreement* to be unenforceable, it did not suggest that a small claims court might decide whether the *arbitration provision* was enforceable.

In this case, as in *Aanderud*, the arbitration provision allows certain claims (small claims, intellectual property claims) to be brought in court. But, unlike *Aanderud*, the severability clause (or "poison pill") is not a separate provision of an overall contract (the purchase agreement in *Aanderud*, the terms of service here) that applies to the contract in general. Instead, it is a subsection of the arbitration provision itself.[9]  After limiting arbitration to "an individual basis and not in a class, representative or private attorney general action," the subsection provides, "If a court decides that applicable law precludes enforcement of any of *this subsection's limitations* as to a particular claim for relief, then that claim (and only that claim) must be severed from the arbitration and may be brought in court." (Italics added.)

Thus, in contrast to *Aanderud*, the severability clause in this case very clearly contemplates that a court may decide whether the arbitration

---

[9] Indeed, the terms of services also contains a separate "Severability and Survival" section that applies to the terms of service in general.  (Some capitalization omitted.)

provision is enforceable when the provision is challenged based on the limitations of the subsection itself. This uncertainty about who may decide such challenges means there is no clear and unmistakable delegation of the issue exclusively to arbitration.[10]

2.    JAMS Rules

The arbitration provision specifies that arbitration will be administered by JAMS, "pursuant to JAMS Streamlined Arbitration Rules & Procedures then in effect" (JAMS Rules). Ring submitted evidence that JAMS Rules in effect as of July 1, 2014, provided that "[j]urisdictional and arbitrability disputes, including disputes over the . . . validity . . . of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator" and the "Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."

We recently held that a similar reference to the AAA Commercial Arbitration Rules (which, like the JAMS Rules provide that the arbitrator has authority to rule on the validity of the arbitration agreement) did not constitute clear and unmistakable delegation in the context of an arbitration agreement in the terms of service governing the relationship between a mobile gaming platform and its users. (*Gostev v. Skillz Platform, Inc.* (2023) 88 Cal.App.5th 1035.) We acknowledged contrary federal authority on the

---

[10] Ring also relies on *B.D. v. Blizzard Entertainment, Inc.* (2022) 76 Cal.App.5th 931, 957–959, a case that followed *Aanderud.* To the extent *B.D.* suggests that *Aanderud*'s holding would apply under the facts of this case, we disagree with that conclusion. A severability clause that expressly contemplates "a court" may decide whether a subsection of an arbitration provision is enforceable "precludes any conclusion that the parties clearly and unmistakably delegated" exclusive authority to decide the same issue to the arbitrator. (*Nelson v. Dual Diagnosis Treatment Center, Inc.* (2022) 77 Cal.App.5th 643, 656 (*Nelson*).)

15

issue, but we agreed with the reasoning of *Ajamian, supra*, 203 Cal.App.4th at page 781, *Beco v. Fast Auto Loans, Inc.* (2022) 86 Cal.App.5th 292, 306, and *Eiess v. USAA Federal Savings Bank* (N.D. Cal. 2019) 404 F.Supp.3d 1240, 1252–1254. For the reasons explained in *Gostev*, we conclude mere reference to JAMS Rules in the arbitration provision does not constitute clear and unmistakable delegation to the arbitrator of threshold issues of enforceability.

Moreover, the reference to the JAMS Rules does not cure the ambiguity created by the severability clause/"poison pill." (See *Nelson, supra*, 77 Cal.App.5th at p. 657 [where the "broad severability language confirms the trial court's retained authority to resolve questions concerning the validity or enforceability of the agreement," reference to AAA rules created, at best, uncertainty about delegation].)

In sum, Ring has not shown the parties clearly and unmistakably delegated exclusive authority to the arbitrator to decide the threshold issue of whether the arbitration provision is enforceable under *McGill*. Accordingly, the trial court did not err by considering the issue.

C.  *The Arbitration Provision Violates* McGill

Ring next argues the trial court erred in determining that the arbitration provision violates *McGill*. We begin with a very brief discussion of *McGill*.

1.  <u>*McGill*</u>

Public injunctive relief is relief that "benefits the general public" and benefits an individual plaintiff only incidentally "or as 'a member of the general public.'" (*McGill, supra*, 2 Cal.5th at p. 955.) In contrast, private injunctive relief "primarily 'resolve[s] a private dispute' between the parties [citation] and 'rectif[ies] individual wrongs.'" (*Ibid.*) In *McGill*, our high

16

court explained that public injunctive relief "is a substantive statutory remedy that the Legislature, through the UCL, the CLRA, and the false advertising law, has made available to [individuals] who meet the statutory standing requirements for filing a private action." (*Id*. at p. 965, italics omitted.)

The predispute arbitration provision at issue in *McGill* provided, "(1) '[a]n award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute'; (2) '[t]he arbitrator will not award relief for or against anyone who is not a party'; (3) 'the arbitrator may award relief only on an individual (non-class, nonrepresentative) basis'; and (4) 'neither you, we, nor any other person may pursue the Claims in arbitration as a class action, private attorney general action or other representative action.' " (*McGill*, 2 Cal.5th at p. 956.) The parties agreed that the arbitration provision was intended to mean that plaintiff McGill was precluded "from seeking public injunctive relief *in any forum*." (*Ibid*.)

The *McGill* court held the arbitration provision was "invalid and unenforceable under state law insofar as it purports to waive McGill's statutory right to seek" public injunctive relief under the UCL, CLRA, and the false advertising law in any forum. (*McGill, supra*, 2 Cal.5th at p. 961.) Citing Civil Code section 3513 (which provides, in part, "a law established for a public reason cannot be contravened by a private agreement"), our high court reasoned that "the waiver in a predispute arbitration agreement of the right to seek public injunctive relief under [these three laws] would seriously compromise the public purposes the statutes were intended to serve."

17

(*McGill*, at p. 961.) The court rejected the defendant's argument "that a California rule precluding enforcement of the waiver would be preempted by the FAA." (*Ibid.*)

### 2. The Trial Court's Decision

The trial court found the arbitration provision in this case purports to waive plaintiffs' right to seek public injunctive relief in any forum. The court found "recent cases following *McGill* . . . instructive," discussing *Mejia v. DACM Inc.* (2020) 54 Cal.App.5th 691 (*Mejia*) and *Maldonado v. Fast Auto Loans, Inc.* (2021) 60 Cal.App.5th 710 (*Maldonado*).[11] The court reasoned:

---

[11] In *Mejia, supra,* 54 Cal.App.5th at page 694, a credit card agreement included an arbitration provision specifying that any party could require arbitration as " 'the sole and exclusive forum and remedy for resolution of a Claim.' " Under the provision, arbitration could not "proceed on a class, representative, or collective basis (including as private attorney general on behalf of others)," and an arbitration award could "determine the rights and obligations of the named parties only" and could not "make an award for the benefit of, or against, anyone other than a named party. . . ." (*Ibid.*, capitalization omitted.) The defendant implicitly conceded that the arbitration provision prevented the plaintiff from seeking a public injunction in arbitration but argued there was "an 'implied exception' [from the arbitration requirement] for seeking a public injunction" in court. (*Id.* at p. 705.) The Court of Appeal rejected the defendant's proposed interpretation of the provision, finding it "directly conflicts with the plain text of the arbitration provision and the clear intent expressed in that text." (*Ibid.*)

In *Maldonado, supra,* 60 Cal.App.5th at page 716, the arbitration provision in a loan agreement required "arbitration take place on an individual basis," prohibited claimants from participating in " 'a class action, private attorney general action, or other representative action', " and specified the "arbitrator may only award relief on behalf of the named parties." The Court of Appeal concluded the "*McGill* rule applie[d]" and affirmed the trial court's denial of the defendant's motion to compel arbitration on the ground "the provision was invalid and unenforceable because it required consumers to waive their right to pursue public injunctive relief." (*Id.* at pp. 713, 720, capitalization omitted.)

18

"[T]he arbitration agreement at issue here, precisely like the ones in *McGill* and the other cases discussed above, purports to waive Plaintiff's [*sic*] right to seek public injunctive relief in any forum, judicial or arbitral." "Under the express terms of the agreement, an arbitrator cannot issue any injunction that would benefit anyone other than an individual consumer who files a demand in arbitration; any broader relief would run afoul of the explicit restrictions in the arbitration agreement on the arbitrator's authority to grant broader relief. Defendant offers no example, nor can the Court imagine one, of an injunction that an arbitrator could issue 'on an individual basis' or 'only in favor of the individual party seeking relief' that could intelligibly be considered 'public injunctive relief.' "

3.     Analysis

Ring moved to compel arbitration because it believes plaintiffs' current claims are subject to "final and binding, bilateral arbitration" and, thus, plaintiffs cannot obtain any relief, including public injunctive relief, in court. Ring does not dispute that plaintiffs seek public injunctive relief, but it argues such relief is available *in arbitration* under the language of the arbitration provision. We do not find Ring's current interpretation of its arbitration provision convincing.

The arbitration provision in this case specifies arbitration is to be "conducted only on an individual basis and not in a class, representative or private attorney general action," an arbitration award must be "on an individual basis," and the arbitrator may award injunctive relief "only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim."

The arbitration agreement in *McGill* contained similar language; claims could not be brought " 'as a class action, private attorney general

19

action or other representative action,' " relief could be awarded " 'only on an individual (non-class, nonrepresentative) basis' " and could not be awarded " 'for . . . anyone who is not a party,' " and an arbitration award was limited to " 'determin[ing] the rights and obligations between the named parties only.' " (*McGill, supra,* 2 Cal.5th at p. 956.) The parties in that case *agreed* that the language meant McGill could not seek public injunctive relief in arbitration (or in court). (*Ibid.*)

Similarly, in *Delisle v. Speedy Cash* (S.D.Cal., June 10, 2019) 2019 WL 2423090, at *7, vacated and remanded on another point (9th Cir. 2020) 818 Fed.Appx. 608, the parties agreed that the arbitration provision was intended to preclude the plaintiffs from seeking public injunctive relief in any forum where it prohibited a claimant "from 'act[ing] as a private attorney general in court or in arbitration' " or " 'join[ing] or consolidat[ing] claim(s) . . . with claims involving any other person.' " And in *McArdle v. AT&T Mobility LLC* (N.D.Cal., Oct. 2, 2017) 2017 WL 4354998, at *1, *4, affd. (9th Cir. 2019) 772 Fed.Appx. 575 (*McArdle*), the parties agreed an arbitration provision "purport[ed] to waive the arbitrator's ability to award public injunctive relief" where it provided, "The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim," and parties may only bring claims in an "individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." (Capitalization omitted.)

Ring argues that cases in which the parties *agreed* about the meaning of the arbitration agreements do not help plaintiffs because the courts in those cases did not interpret the contractual language. We nonetheless find these cases relevant because they demonstrate that terms in arbitration

20

agreements that prohibit "private attorney general" actions in arbitration, limit arbitration awards to "an individual basis," and limit injunctive relief in arbitration to awards "only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim" are all commonly understood by the parties who agree to these terms to mean public injunctive relief is not available in arbitration.

Courts also routinely construe these terms as prohibiting awards of public injunctive relief in arbitration. (E.g., *Mejia*, *supra*, 54 Cal.App.5th at pp. 702–705 [arbitration provision that precludes arbitration " 'as private attorney general on behalf of others' " violates *McGill*]; *Blair v. Rent-A-Center, Inc.* (9th Cir. 2019) 928 F.3d 819, 831 (*Blair*) [arbitration provision that "prohibits the arbitrator from awarding 'relief that would affect . . . account holders other than you,' and eliminates any 'right or authority for any dispute to be brought, heard, or arbitrated as a class, collective, mass, private attorney general, or representative action' " "precludes the arbitrator from awarding public injunctive relief"]; *Dornaus v. Best Buy Co., Inc.* (N.D.Cal., Feb. 14, 2019) 2019 WL 632957, at *4 [arbitration provision that permits "relief only on an individual basis" means "the arbitrator [is precluded] from awarding public injunctive relief, which is relief intended to benefit those other than the individual bringing the claim"]; *Rogers v. Lyft, Inc.* (N.D.Cal. 2020) 452 F.Supp.3d 904, 917–918, aff'd (9th Cir., Feb. 16, 2022) 2022 WL 474166 (*Rogers*) [arbitration agreement providing "that the 'arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's claims' " "purported to waive the right to seek [public injunctive] relief, [but] this waiver is invalid"].)

In *MacClelland v. Cellco Partnership* (N.D.Cal. 2022) 609 F.Supp.3d 1024, 1037 (*MacClelland*), the arbitration agreement contained language identical to the arbitration provision in this case limiting injunctive relief in arbitration to an award " 'only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim.' " The district court found, "By precluding injunctive relief benefitting anyone other than the individual claimant, the contract prevents Plaintiffs from seeking public injunctive relief in any forum." (*Ibid.*; see also *Brown v. Madison Reed, Inc.* (N.D.Cal., Aug. 30, 2021) 2021 WL 3861457, at *7 (*Brown*) [where the arbitration agreement provides, "The arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim" (italics omitted), the "provision . . . does not allow [the plaintiff] to seek public injunctive relief in arbitration"].)

In line with these cases, we agree with the trial court that the arbitration provision here prohibits public injunctive relief in arbitration.

For its contrary position, Ring relies on *DiCarlo v. MoneyLion, Inc.* (9th Cir. 2021) 988 F.3d 1148 (*DiCarlo*). There, the arbitration agreement prohibited a claimant from "acting as a private attorney general" and " 'authorize[d]' the arbitrator to 'award all [injunctive] remedies available in an individual lawsuit under [California] law.' " (*Id.* at p. 1153.) The Ninth Circuit Court of Appeals framed the question on appeal as whether "public injunctive relief under the relevant statutes [is] available in an 'individual lawsuit' without a plaintiff 'act[ing] as a private attorney general.' " (*Ibid.*) The court concluded the answer was yes because "[p]ublic injunctive relief is available under California law in individual lawsuits—not just in private-

attorney-general suits" and, therefore, "[the plaintiff] DiCarlo may secure that relief in arbitration under the Agreement." (*Id*. at p. 1155.)

*DiCarlo* appears to conflict with cases like *Maldonado*, *supra*, 60 Cal.App.5th 710, in which the Fourth District Court of Appeal held an agreement was invalid under *McGill* where it required arbitration "on an individual basis," prohibited private attorney general actions, and limited awards in arbitration to "relief on behalf of the named parties." (*Id*. at pp. 713, 716, 720; and see *Dornaus v. Best Buy Co., Inc.*, *supra*, 2019 WL 632957, at *4 [arbitration provision that permits "relief only on an individual basis" means "the arbitrator [is precluded] from awarding public injunctive relief, which is relief intended to benefit those other than the individual bringing the claim"].) To the extent the case law cannot be reconciled, we do not find *DiCarlo* more persuasive than the many cases we have cited above. But *DiCarlo* is also distinguishable. Here, unlike in *DiCarlo*, the arbitration provision also limits injunctive relief in arbitration to an award "only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim." Post-*DiCarlo*, federal district courts have construed this language to mean public injunctive relief is not available in arbitration. In *Brown*, the district court distinguished *DiCarlo* on the ground the agreement at issue was "more restrictive and authorizes an arbitrator to award 'injunctive relief *only in favor of the claimant* and *only to the extent necessary to provide relief warranted by the claimant's individual claim*,'" and this provision meant the plaintiff was "not allow[ed] . . . to seek public injunctive relief in arbitration." (*Brown*, *supra*, 2021 WL 3861457, at *8; see also *MacClelland*, *supra*, 609 F.Supp.3d at p. 1037; *Rogers*, *supra*, 452 F.Supp.3d at pp. 917–918.)

Ring points out that in *DiCarlo*, the arbitration agreement provided, " 'The arbitrator . . . shall be authorized to award all remedies available in an individual lawsuit . . ., including, without limitation, . . . injunctive . . . relief,' " which the court characterized as an "all-remedies clause." (*DiCarlo*, *supra*, 988 F.3d at p. 1157.) The *DiCarlo* court reasoned that an interpretation of the arbitration agreement prohibiting public injunctive relief in arbitration contradicted the "all-remedies clause," and observed, "We do not honor the contracting parties' expressed intent by creating internal contradictions in the Agreement." (*Ibid*.)

In this case, the arbitration provision states, "An arbitrator . . . can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of these Terms [of Service]." Ring argues the phrase that an arbitrator can award "the same damages and relief as a court," including injunctive relief, means public injunctive relief is available in arbitration. But the very next phrase requires the arbitrator to "follow the terms," which includes the limitation that injunctive relief be awarded "only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim." This language, in turn, is both commonly understood by parties to arbitration agreements to preclude public injunctive relief in arbitration (*McArdle*, *supra*, 2017 WL 4354998, at *4), and interpreted by courts to preclude public injunctive relief in arbitration (*MacClelland, supra*, 609 F.Supp.3d at p. 1037; *Rogers*, *supra*, 452 F.Supp.3d at pp. 917–918; *Brown*, *supra*, 2021 WL 3861457, at *8.) By giving meaning to the term limiting injunctive relief in arbitration to awards "only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim," we

24

are not creating internal contradictions in the arbitration provision. To the extent there is a contradiction, it is inherent in the arbitration provision itself. Nor would be honoring the contracting parties' expressed intent if we were to ignore the term limiting injunctive relief in arbitration.

Ring also relies on *Maynez v. Walmart, Inc.* (C.D. Cal. 2020) 479 F.Supp.3d 890 and *Maybaum v. Target Corporation* (C.D. Cal., May 3, 2022) 2022 WL 1321246. In *Maynez*, the arbitration agreement allowed " 'injunctive relief . . ., but only to the extent necessary to provide relief warranted by the individual claim before the arbitrator.' " (Italics omitted.) The district court recognized this term "might be read as a waiver of Plaintiff's right to seek public injunctive relief in arbitration," (*id*. at p. 899), but the court accepted defendant Walmart's representation that the agreement allowed the arbitrator to award a public injunction (*id*. at p. 900). Similarly, in *Maybaum*, the district court "accept[ed] [defendant Target's] interpretation" that a similar term "permits public injunctive relief and thus does not violate *McGill*." (*Maybaum*, *supra*, 2022 WL 1321246, at *6.) Of course, we are not required to accept Ring's current interpretation of the arbitration provision language over the reasonable interpretation urged by plaintiffs. (Cf. *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 798 ["When ambiguities in a standardized contract . . . cannot be dispelled by application of the other rules of contract interpretation, they are resolved against the drafter"].) And, in any event, nothing in *Maynez* and *Maybaum* persuades us to depart from *MacClelland*, *supra*, 609 F.Supp.3d 1024, *Brown*, *supra*, 2021 WL 3861457, and *Rogers*, *supra*, 452 F.Supp.3d 904.

4. FAA Preemption

The Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) "requires courts to 'place arbitration agreements on an equal footing with other contracts

25

[citation] and [to] enforce them according to their terms.' " (*McGill, supra*, 2 Cal.5th at pp. 961–962, quoting *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339.) When a "state law prohibits outright the arbitration of a particular type of claim," the FAA preempts that law. (*Concepcion*, at p. 341.)

Ring argues that, if the *McGill* rule means public injunctive relief is not available in bilateral arbitration, then the FAA preempts the rule. But that is not what the *McGill* court held, and that is not the basis of our decision in this appeal.[12] In *McGill*, our high court held only that an arbitration agreement is invalid and unenforceable insofar as it purports to waive a claimant's statutory right to seek public injunctive relief in any forum. (*McGill, supra*, 2 Cal.5th at p. 961.) Here, we conclude, as a matter of contract interpretation, the arbitration provision at issue purports to do just that because it requires arbitration of plaintiffs' claims but does not allow awards of public injunctive relief in arbitration. We do *not* rely on a rule that bilateral arbitration agreements requiring arbitration of requests for public injunctive relief are per se unenforceable. Thus, the FAA does not preempt *McGill*'s holding. (*Ibid.*)

---

[12] Here, we pause to observe that California Supreme Court decisions *prior* to *McGill* established that agreements to arbitrate claims seeking public injunctive relief are not enforceable as a matter of state law; this is known as the *Broughton–Cruz* rule. (*McGill, supra*, 2 Cal.5th at p. 953; see *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303; *Broughton v. Cigna Healthplans of California* (1999) 21 Cal.4th 1066.) In *McGill*, our high court initially granted review to consider whether the FAA preempted the *Broughton–Cruz* rule, but the court did not decide the question because the parties agreed on appeal that the arbitration provision at issue did not permit claimants to seek public injunctive relief in arbitration in the first place. (*McGill*, at p. 956.) Here, we assume without deciding that state law does not prevent parties from agreeing to arbitrate requests for public injunctive relief.

26

D.    *Severability*

As we have described, the arbitration provision includes the following severability clause/"poison pill": "If a court decides that applicable law precludes enforcement of any of this subsection's limitations as to a particular claim for relief, then that claim (and only that claim) must be severed from the arbitration and may be brought in court."

Ring argues this means the parts of plaintiffs' three causes of action that involve a prayer for public injunctive relief should be severed from arbitration and plaintiffs should be ordered to arbitrate "liability, damages, and non-public injunctive relief."  We disagree.

In *Blair, supra*, 928 F.3d 819, the Ninth Circuit Court of Appeals considered a similar severability clause in an arbitration agreement.  It provided: "If there is a final judicial determination that applicable law precludes enforcement of this Paragraph's *limitations as to a particular claim for relief, then that claim (and only that claim) must be severed from the arbitration and may be brought in court*.  (Italics added.)  The italicized language is identical to the severability clause in this case.  After finding the arbitration agreement violated *McGill*, the court "read the [severability] clause, as did the district court, to provide that the entire claim be severed for judicial determination." (*Id*. at pp. 831–832.)  The defendant argued the phrase " 'claim for relief' " referred "only to a particular remedy, not to the underlying claim."  The district court found this interpretation " 'unnatural and unpersuasive,' " as did the Ninth Circuit.  (*Id*. at p. 831.)  The *Blair* court reasoned, "A 'claim for relief,' as that term is ordinarily used, is synonymous with 'claim' or 'cause of action.' " (*Ibid*.)

Ring argues we should reject *Blair*, asserting, "Lawyers and courts routinely refer to remedies as 'claims for relief'—as in 'claims for public

injunctive relief.' " Ring notes that in *McGill*, *Maldonado*, and a few other cases, the courts used the phrase, "claims for public injunctive relief." But we do not see how this suggests the phrase "claim for relief" as used in the severability clause means "specific remedy requested" and not the more commonly understood "claim" or "cause of action."[13] Recall that the sentence preceding the severability clause provides, ". . . the arbitrator may not consolidate more than one person's *claims* and may not otherwise preside over any form of a representative or class proceeding." (Italics added.) In this context, it is far more reasonable to read "claim for relief" to refer to a person's claim and not to a particular remedy requested in respect to a claim.

In short, we agree with the trial court that the severability clause/ "poison pill" means plaintiffs' claims (that is, their three causes of action under the Consumer Legal Remedies Act, false advertising law, and UCL, respectively) cannot be arbitrated and may be brought in court.

E.    *Procedural Rulings*

1.    Denial of Ring's Request to Supplement the Record

Ring contends the trial court abused its discretion in denying its request to supplement the record, which it filed on the day of the hearing on its motion to compel arbitration. This contention lacks merit.

Under Code of Civil Procedure section 1005, subdivision (b), moving and supporting papers must be filed at least 16 court days before the hearing, opposition papers must be filed at least nine days before the hearing, and reply papers must be filed at least five days before the court hearing.

---

[13] Further, courts distinguish types of remedies sought from "claims for relief." For example, in *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 398, the court observed, "A constructive trust . . . is an equitable *remedy*, not a substantive claim for relief."

"[A] trial court has broad discretion to accept or reject late-filed papers." (*Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 262.) Moreover, "[t]he general rule of motion practice . . . is that new evidence is not permitted with reply papers." (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537, 1538 [no abuse of discretion in the trial court declining to consider evidence submitted with a reply].)

Here, after the time to file papers on the motion to compel had passed, plaintiffs sought to file supplemental papers three days before the hearing and Ring sought to file supplemental papers on the day of the hearing. At the hearing, the trial court stated that "both sides seem to be under the impression that once a matter is fully briefed, you can just keep filing papers," noting it "was just handed . . . additional papers a few minutes ago." The court then denied *both parties'* requests. We see no abuse of discretion.

Ring's reliance on *Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047 is misplaced. There, the Court of Appeal held the moving parties' supplemental declaration filed in support of their motion to compel arbitration need not comply with the time limit for initial moving papers where the moving parties already met their initial burden of establishing an agreement to arbitrate in their moving papers. (*Id.* at pp. 1051–1052, 1060.) But the supplemental declaration in that case was filed *before* the plaintiff filed his opposition. (*Id.* at p. 1054.) Nothing in *Espejo* suggests it would be an abuse of discretion for a trial court to decline to consider papers filed after the deadline for filing a reply.

2.     Declining to Consider Ring's Motion for Reconsideration

Next, Ring argues the trial court was incorrect in determining that it lacked jurisdiction to consider Ring's motion for reconsideration once Ring filed its notice of appeal of the underlying order.

29

Code of Civil Procedure section 916, subdivision (a) (section 916(a)), provides (with exceptions not relevant here), "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order."

Ring appears to suggest that section 916(a) does not apply to appeals from orders denying motions to compel arbitration, but it does not explain why this might be so. Then Ring cites *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180 (*Varian*), in which the California Supreme Court recognized section 916(a) *does* apply to appeals from denials of motions to compel arbitration. The *Varian* court explained: "[A] proceeding affects the effectiveness of the appeal if the very purpose of the appeal is to avoid the need for that proceeding. In that situation, the proceeding itself is inherently inconsistent with a possible outcome on appeal and must therefore be stayed under section 916, subdivision (a). Thus, *an appeal from the denial of a motion to compel arbitration automatically stays all further trial court proceedings* on the merits." (*Varian*, at pp. 190–191, italics added.)

The stay under section 916(a) applies to any "trial court proceeding [that] directly or indirectly seek to 'enforce, vacate or modify [the] appealed judgment or order.'" (*Varian, supra*, 35 Cal.4th at p. 189.) The trial court correctly found it lacked jurisdiction to decide Ring's motion for reconsideration because the motion sought to vacate and modify the order being appealed. (See *Young v. Tri-City Healthcare Dist.* (2012) 210 Cal.App.4th 35, 53 ["the trial court lacked subject matter jurisdiction to

continue to entertain the [appellant's] reconsideration motion, as of the time that the [appellant] filed its appeal"].)

F.    *Which Version of the Arbitration Provision Governs*

Finally, Ring urges this court to "conclude that the December 2020 Terms control this dispute."  Ring misapprehends our role.  "An ' "essential distinction" ' between trial courts and appellate courts is that ' "it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law. . . ." ' (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.)  Appellate courts do not make factual findings; we review ' "the correctness of a judgment [or order] as of the time of its rendition." ' " (*People v. Contreras* (2015) 237 Cal.App.4th 868, 892.)

To the extent Ring's argument is that the trial court erred—and was required as a matter of law to find that the December 2020 version of the arbitration provision (Exhibit K) applies to plaintiffs' claims—we reject this argument.  In its moving papers, Ring did not identify which of 10 versions of its terms of service it believed governed, and, when it quoted the arbitration provision, Ring cited Exhibits C and G and never specifically cited Exhibit K. Ring first asserted Exhibit K should control in its reply papers.  A trial court has discretion whether "to accept arguments or evidence made for the first time in reply." (*Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1009.)  Thus, it was within the trial court's discretion to reject Ring's new argument that Exhibit K controlled.  We find no error.

## DISPOSITION

The order denying the motion to compel arbitration is affirmed.

31

_____
Miller, J.

WE CONCUR:


_____
Richman, Acting P.J.


_____
Markman, J.*


A165103, A165386, *Jack v. Ring*

_____

    * Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Court:  San Francisco County Superior Court

Trial Judge:  Hon. Ethan P. Schulman

Davis Wright Tremaine, Scott R. Commerson, Rochelle L. Wilcox, James H. Moon, Daniel H. Leigh, for Defendant and Appellant

Hattis & Lukacs, Daniel M. Hattis, Paul Karl Lukacs; DeNittis Osefchen Prince, Stephen DeNittis, Shane T. Prince, for Plaintiff and Respondent

A165103, A165386, *Jack v. Ring*