Filed 12/29/23; Certified for Publication 1/29/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CHARLES RAMSEY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>COMCAST CABLE<br>COMMUNICATIONS, LLC,<br><br>Defendant and Appellant. | H049949<br>(Santa Clara County<br>Super. Ct. No. 21CV384867) |

Charles Ramsey subscribes to Comcast Cable Communications, LLC's (Comcast) Xfinity services. Ramsey sued Comcast for violations of California's consumer protection statutes, alleging that Comcast engaged in unfair, unlawful, and deceptive business practices under the Consumers Legal Remedies Act (CLRA) and the unfair competition law (UCL). Ramsey's complaint sought injunctive relief. Comcast filed a petition to compel arbitration pursuant to the arbitration provision in the parties' subscriber agreement. The trial court denied the petition based on the Supreme Court's decision in *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945 (*McGill*), which held that a predispute arbitration provision that waives a plaintiff's right to seek public injunctive relief in any forum is "contrary to California public policy and is thus unenforceable under California law." (*Id*. at p. 951.) Because the arbitration provision in Comcast's subscriber agreement required the parties to arbitrate all disputes and permitted the arbitrator to grant only individual relief, the trial court held that the provision waived

Ramsey's right to seek public injunctive relief in any forum. Further concluding that Ramsey's complaint sought public injunctive relief, the court held the arbitration provision to be unenforceable.

On appeal, Comcast argues that the trial court erred in concluding that Ramsey was seeking public injunctive relief. Comcast contends that the requested injunction was private because it would benefit only a subset of Comcast subscribers. Comcast further argues that the Federal Arbitration Act (FAA) preempts *McGill*. Concluding that Ramsey's complaint seeks public injunctive relief, and that *McGill* is not preempted, we affirm the trial court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Comcast designs, operates, markets, and sells its Xfinity cable television, internet, home telephone, and related subscription services to millions of consumers in California and nationwide. Ramsey has been a subscriber to Comcast's services since 2009. When Ramsey initially signed up for services, Comcast offered him a "limited time promotional rate" and represented that it would last for approximately one year from the date the subscription began, after which, the price of the subscription would increase.

When Ramsey's promotional rate for Comcast's services was nearing its initial expiration, he determined that he was not willing to pay the additional price increase to maintain his subscription, and contacted Comcast to discuss cancelling his service. Upon speaking to a customer service representative regarding the cancellation, Ramsey was "instead offered additional channels, faster internet speed, and additional services at a premium cost." Ramsey expressed his lack of interest in the upgraded packages and indicated he was only willing to continue purchasing Comcast's most basic subscription package. After some discussion, the customer service representative eventually offered Ramsey a "new" limited-time promotion, consisting of "similar, if not identical services

[1] Our statement of facts is based on the allegations from Ramsey's underlying complaint.

to what [Ramsey] had been receiving, at a cost comparable to the current promotional rate he was being charged." The customer service representative again informed Ramsey that this promotional rate would expire in approximately one year.

Each year since then, Ramsey has contacted Comcast near the conclusion of his promotional period to discuss pricing options. Each year, Comcast's customer service representative has "miraculously come up with a 'new' comparable promotional package" to offer Ramsey. Comcast does not contact Ramsey to inform him that his promotional period is about to expire, nor offer him any new and comparable promotions "unless and until he contacts [Comcast]." Each time, the new promotional rate Ramsey is offered has "arbitrarily varied," but is always less than the non-promotional rate he would otherwise pay if he did not reach out to Comcast.

## A. Ramsey's Complaint for Violations of the CLRA and UCL

In 2021, Ramsey filed a complaint against Comcast in superior court, alleging violations of the CLRA and UCL. Ramsey's complaint sets forth four causes of action. The first cause of action alleges a violation of the CLRA, which prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." (Civ. Code, § 1770, subd. (a).) In connection with this cause of action, Ramsey alleges that by "failing to disclose to [Ramsey] and concealing the existence of, and true and actual reasons for, Xfinity subscription service pricing, Defendants violated [the CLRA], as they misrepresented the reasons for, existence of, or amounts of, price reductions with respect to their services." For this cause of action, Ramsey seeks "public injunctive relief enjoining Defendants' unfair or deceptive acts or practices and correcting all false and misleading statements and material omissions concerning pricing models, reasons for changes in pricing, and the availability of discounts, to prevent future injury to the general public."

3

Ramsey's second cause of action alleges a violation of the UCL's prohibition against unfair business practices. According to the complaint, "[Ramsey] purchased Defendants' services at costs he reasonably believed to be the accurate, true, and the actual price of those services, when in fact, Defendants have and continue to offer secret and unearned discounts on their services to select consumers, and concealing the existence and amount of these discounts to the general public." This practice of "issuing secret rebates constitutes an unfair business practice in violation of California Business and Professions Code section 17200, et seq."[2] For this cause of action, Ramsey seeks a "permanent injunction requiring Defendants to halt their practice of issuing secret discounts."

Ramsey's third cause of action alleges a violation of section 17045, which falls under the UCL's prohibition against unlawful business practices. Section 17045 provides that the "secret payment or allowances of rebates, refunds, commissions, or unearned discounts . . . to the injury of a competitor and where such payment or allowance tends to destroy competition, is unlawful." (§ 17045.) In this cause of action, Ramsey seeks "public injunctive relief and declaratory relief enjoining Defendants' unfair or deceptive acts or practices to prevent injury to the general public."

Ramsey's fourth cause of action seeks declaratory and injunctive relief for the aforementioned law violations. In connection with this cause of action, Ramsey requests that the court adjudicate and declare that, (1) Ramsey has a right to view and rely upon truthful advertising, (2) that Comcast has an obligation to "ensure all of their advertisements and related statements and representations are truthful, complete, and not misleading," (3) that Comcast not issue "secret and earned [*sic*] discounts to select consumers," and (4) that Comcast has an obligation to "train their personnel not to misrepresent Defendants' services and pricing and to present consumers with truthful,

_____

[2] All statutory references are to the Business & Professions Code, unless otherwise stated.

complete and accurate information." Ramsey also seeks "related injunctive relief that requires Defendants to comply with their legal obligations and utilize only truthful and complete advertisements, statements, and representations, and ensure consumers are aware of any and all price reductions and rebates Defendants seek to grant to consumers."

In his prayer for relief, Ramsey seeks a "declaration requiring Defendants to comply with the various provisions of the CLRA and UCL alleged herein," and an order "enjoining Defendants from continuing their unlawful and unfair business practices." Though Ramsey alleges that he had suffered "an ascertainable loss of money, including . . . out of pocket costs incurred in paying nonpromotional rates when he did not immediately contact [Comcast] to obtain new promotional pricing," he does not seek monetary damages but only declaratory and injunctive relief, and an award of costs and attorney's fees.

## B. Comcast's Petition to Compel Arbitration

Comcast sought to compel arbitration. In the petition, Comcast argued that Ramsey has continuously accepted the terms of Comcast's subscriber agreements, which has contained an arbitration provision since 2011. Comcast asserted that the trial court should compel arbitration based on the subscriber agreement included in Ramsey's May 2021 bill (the 2021 subscriber agreement), which provided that any "Dispute" between the parties "shall be resolved through individual arbitration." The 2021 subscriber agreement also included a waiver of all class, collective, and representative claims, providing that "[t]he arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that individual party's claim, and the arbitrator may not award relief for or against or on behalf of anyone who is not a party."

In the petition, Comcast acknowledged the *McGill* decision, but argued that because Ramsey's complaint sought private, not public injunctive relief, *McGill* was not

5

implicated. Ramsey opposed Comcast's petition, arguing that his complaint sought public injunctive relief within the meaning of *McGill*.

### C. Trial Court's Order Denying Comcast's Petition to Compel Arbitration

The trial court denied Comcast's petition, finding unpersuasive Comcast's argument that *McGill* did not apply because Ramsey was seeking private, not public injunctive relief. The court held that the subject arbitration provision violated *McGill* because it "explicitly barred the arbitrator from determining 'the rights, obligations, or interests of anyone other than a named party,' or from 'making an award for the benefits of anyone . . . other than a named party.' "

Relying on *Mejia v. DACM Inc.* (2020) 54 Cal.App.5th 691(*Mejia*) and *Maldonado v. Fast Auto Loans, Inc.* (2021) 60 Cal.App.5th 713 (*Maldonado*), the trial court further held that *McGill* applies when a plaintiff seeks to "enjoin future violations of California's consumer protection statutes." The court held that the requested relief in Ramsey's complaint is "indistinguishable" from that sought in *Mejia* and *Maldonado*, and "describe[s] public injunctive relief." The trial court thus concluded that the arbitration provision was unenforceable.

Comcast timely appealed the trial court's order.

## II. DISCUSSION

On appeal, Comcast argues that the trial court erred in holding the arbitration provision in its 2021 subscriber agreement to be unenforceable under *McGill*. Comcast does not dispute that the arbitration provision, by its terms, waives Ramsey's right to seek public injunctive relief in any forum. Rather, Comcast contends that *McGill* is not implicated because Ramsey does not seek a public injunction, but a private one. Alternatively, Comcast argues that *McGill* itself is invalid because it is preempted by the FAA.

We conclude that the requested relief set forth in Ramsey's complaint falls within *McGill's* definition of public injunctive relief. We decline to hold that the FAA preempts

6

*McGill*.  We affirm the trial court's order denying Comcast's petition to compel arbitration.

### A. Standard of Review

An order denying a petition to compel arbitration is appealable.  (Code Civ. Proc., § 1294, subd. (a).)  When, as here, a trial court's order denying a petition to compel arbitration is based on a question of law, we review the denial de novo.  (*Clifford v. Quest Software Inc.* (2019) 38 Cal.App.5th 745, 749.)

### B. The Complaint Seeks Public Injunctive Relief

#### 1. The Relief Sought Falls Within McGill's Definition of Public Injunctive Relief

To determine whether Ramsey's complaint seeks public or private injunctive relief, we look first to *McGill* itself.  In *McGill*, the Supreme Court, relying on its earlier decisions in *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066 (*Broughton*) and *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303 (*Cruz*), distinguished between the two types of injunctive relief:  Private injunctive relief is "relief that primarily 'resolve[s] a private dispute' between the parties . . . and 'rectif[ies] individual wrongs' . . . and that benefits the public, if at all, only incidentally."  (*McGill, supra*, 2 Cal.5th at p. 955, quoting *Broughton, supra*, 21 Cal.4th at pp. 1079-1080.)  Public injunctive relief is "relief that 'by and large' benefits the general public . . . and that benefits the plaintiff, 'if at all,' only 'incidental[ly]' and/or as 'a member of the general public.' "  (*McGill, supra*, at p. 955, alterations in original.)  "To summarize, public injunctive relief under the UCL, the CLRA, and the false advertising law is relief that has 'the primary purpose and effect' of prohibiting unlawful acts that threaten future injury to the public.  (*Broughton, supra*, at p. 1077.)"  (*McGill, supra*, at p. 955.)  "Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff– or to a group of individuals similarly situated to the plaintiff–does not constitute public injunctive relief."  (*Ibid*.)

7

McGill opened a credit card account with Citibank and purchased a credit protection plan, which permitted her to defer payments on the credit card in a qualifying event, such as long-term disability or unemployment. (*McGill*, *supra*, 2 Cal.5th at p. 952.) While McGill's initial accountholder agreement did not contain an arbitration provision, such a provision was later added and there was no dispute that it was in effect during the relevant time period. (See *id.* at pp. 952-953.)

McGill filed a class action lawsuit against Citibank based on Citibank's marketing of the credit protection plan and its handling of a claim she had made under it after she lost her job. (*McGill, supra*, 2 Cal.5th at p. 953.) The complaint alleged various violations of California's consumer protection laws, including the CLRA, UCL, and the false advertising laws, and sought "an injunction prohibiting Citibank from continuing to engage in its illegal and deceptive practices," in addition to other relief. (*Ibid*.) Citibank moved to compel arbitration based on the arbitration provision set forth in the accountholder agreement. (*Id.* at pp. 952-953.) The trial court granted the petition in connection with McGill's monetary claims but denied it in connection with the requests for injunction under the CLRA, UCL, and false advertising laws. The Court of Appeal reversed, concluding that all of McGill's claims were subject to arbitration. (*Id.* at p. 953.)

The Supreme Court in turn reversed the appellate court, holding that an arbitration provision that waives a plaintiff's right to seek public injunctive relief in any forum is invalid and unenforceable. (*McGill, supra*, 2 Cal.5th at pp. 951-952.) The court then examined McGill's complaint to determine whether it sought public or private injunctive relief. (*Id.* at p. 956.) The court provided two examples of what it believed constituted public injunctive relief. "[A]n injunction under the CLRA against a defendant's deceptive methods, acts, and practices 'generally benefit[s]' the public 'directly' by the elimination of deceptive practices and 'will . . . not benefit' the plaintiff 'directly,' because the plaintiff has 'already been injured, allegedly, by such practices and [is] aware

8

of them.' [*Broughton, supra*, 21 Cal.4th at p. 1080, fn. 5])." (*McGill*, at p. 955.) Likewise, "an injunction under the UCL or the false advertising law against deceptive advertising practices 'is clearly for the benefit of . . . the general public'; 'it is designed to prevent further harm to the public at large rather than to redress or prevent injury to a plaintiff.' (*Cruz, supra*, 30 Cal.4th at pp. 315-316.)" (*McGill*, at p. 955.)

The court concluded that McGill's requested relief "does, in fact, appear to seek the type of public injunctive relief that *Broughton* and *Cruz* identified." (*McGill, supra*, 2 Cal.5th at p. 956.) The complaint was brought under the consumer protection statutes and alleged "unfair, deceptive, untrue, and misleading" advertising and marketing, and "false, deceptive, and/or misleading" representations and omissions. (*Id.* at pp. 956-957.) The complaint sought an injunction "to ensure compliance" with these laws, and to enjoin Citibank from "continuing to falsely advertise or conceal material information and conduct business via the unlawful and unfair business acts and practice complained herein." (*Id.* at p. 957.) "In light of these allegations and requests for relief . . . we disagree with Citibank that McGill has failed adequately . . . 'to explain how the public at large would benefit from' that relief." (*Ibid*.)

As in *McGill*, Ramsey alleges violations of California's consumer protection statutes–specifically, the CLRA and UCL. The complaint similarly seeks injunctive relief that "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." (*McGill, supra*, 2 Cal.5th at p. 955.) For example, as in *McGill*, where the plaintiff sought to enjoin unfair and deceptive marketing practices and ensure Citibank's future compliance with consumer protection laws, Ramsey's complaint seeks to (1) enjoin Comcast from engaging in "unfair or deceptive acts or practices and correcting all false and misleading statements and material omissions . . . to prevent future injury to the general public"; (2) require Comcast to "halt their practice of issuing secret discounts"; (3) require Comcast to "comply with their legal obligations and

9

utilize only truthful and complete advertisements, statements, and representations"; and (4) enjoin Comcast from "continuing their unlawful and unfair business practices."

An injunction that seeks to prohibit a business from engaging in unfair or deceptive practices and marketing, requires it to provide enhanced pricing transparency, and requires it to comply with our consumer protection laws, does have the primary purpose and effect of protecting the public, and thus falls within *McGill's* definition of public injunctive relief.

### 2. An Injunction That Primarily Benefits Both Subscribers and Potential Subscribers Is a Public Injunction

Comcast contends that Ramsey's complaint does not seek public injunctive relief because "any injunction flowing from Ramsey's claims would, primarily–if not exclusively, benefit a limited group of existing Comcast subscribers whose promotional terms are coming to an end." Specifically, Comcast argues that any injunctive relief granted under the complaint would benefit only the following subset of individuals: "(1) existing Comcast subscribers, (2) who currently receive services on a promotional rate term agreement, (3) who are far enough into that term to make a decision about their next contact, and (4) who would make a commitment to another fixed term subscription."

But we conclude that the scope of the requested injunction is not so constricted. As Ramsey's complaint sets forth, "[r]easonable consumers . . . rely on the representations made by service providers in determining whether to purchase their services and consider that information important to their purchase decision." Ramsey argues that any consumer would want a "complete and accurate representation of what happens after promotional pricing ends, what other pricing is available, further discounts, etc., without misrepresentations and concealment, when deciding whether to purchase such subscription services." Thus, an injunction that prohibits Comcast from engaging in "deceptive acts and practices," requires Comcast to utilize "only truthful and complete advertisements," and requires Comcast to make consumers "aware of any and all price

10

reductions and rebates," would benefit both existing Comcast subscribers and any member of the public who considers signing up with Comcast (i.e., potential subscribers). This benefit would come in the form of more accurate and transparent pricing options, not only for the one-year promotional term, but for the duration of the consumer's subscription. Such enhanced transparency, in turn, would enable subscribers and potential subscribers alike to make informed decisions from the outset about whether to subscribe to Comcast, for how long, and to compare Comcast prices against those of its competitors.

The issue, then, is whether an injunction that benefits both existing and potential Comcast subscribers qualifies as a public injunction under *McGill*. On this question, Ramsey urges us to follow *Mejia* and *Maldonado*. Comcast argues that we should reject *Mejia* and *Maldonado* in favor of *Hodges v. Comcast Cable Communications, LLC* (9th Cir. 2021) 21 F.4th 535 (*Hodges*). We conclude that *Mejia* and *Maldonado* are both persuasive and consistent with the Supreme Court's decision in *McGill.* We thus decline to follow *Hodges*.

  *(a) Mejia and Maldonado*

Mejia bought a used motorcycle from Del Amo (a dealership) and financed the purchase using a credit card he obtained through the dealership. (*Mejia*, *supra*, 54 Cal.App.5th at p. 694.) He subsequently filed a class action complaint, alleging that Del Amo violated the Rees-Levering Automobile Sales Finance Act, the CLRA, and the UCL by "failing to provide its consumers with a *single document* setting forth all the financing terms for motor vehicle purchases made with a conditional sale contract." (*Id.* at p. 695.) Among other relief, the complaint sought an injunction prohibiting Del Amo from selling motor vehicles "without first providing the consumer with a single document containing all of the agreements of Del Amo and the consumer with respect to the total cost and the terms of payment." (*Ibid.*) Del Amo moved to compel arbitration based on the parties'

11

prior agreement, but the trial court denied the petition, holding that the arbitration provision was unenforceable under *McGill*. (*Id.* at pp. 693, 696-697.)

On appeal, Del Amo disputed that Mejia sought public injunctive relief, arguing that the requested injunction was private because it would benefit "only a narrow group of Del Amo customers–the class of similarly situated individuals who, like Mejia, would buy a motorcycle from Del Amo with a conditional sales contract." (*Mejia, supra*, 54 Cal.App.5th at p. 702.) The court rejected this argument as "mak[ing] little sense," reasoning that the requested injunction would force Del Amo to stop selling motorcycles in California without first providing consumers with statutorily mandated disclosures in a single document. (*Id.* at p. 702.) This request is "plainly one for a public injunction given that [plaintiff] 'seeks to enjoin future violations of California's consumer protection statutes, relief oriented to and for the benefit of the general public.' (*Blair v. Rent-A-Center, Inc.* (9th Cir. 2019) 928 F.3d 819, 831.)" (*Mejia, supra*, at p. 703.) In addition, the requested injunction did not "limit itself to relief only for class members or some other small group of individuals; it encompassed 'consumers' generally." (*Ibid*.) For these reasons, the court in *Mejia* concluded that the requested injunction "fits the Supreme Court's definition of 'public injunctive relief' in *McGill*: 'injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public.' (*McGill, supra*, 2 Cal.5th at p. 951.)" (*Mejia, supra*, at pp. 703-704.)

Similarly, in *Maldonado*, Fast Auto Loans (Lender) offered loans to California consumers in immediate need of cash who had limited credit opportunities. (*Maldonado, supra*, 60 Cal.App.5th at p. 713.) The plaintiffs brought a putative class action against Lender under the CLRA and UCL, alleging that Lender charged "unconscionable interest rates" in violation of state law. (*Ibid.*) The complaint sought an injunction requiring Lender to "cease charging an unlawful interest rate on its loans exceeding $2500" and to "institute corrective advertising and provide written notice to the public of the unlawfully

12

charged interest rate on prior loans." (*Id.* at p. 715.)  The trial court denied Lender's petition to compel arbitration based on *McGill.*  (*Id.* at p. 716.)  On appeal, Lender argued that *McGill* did not apply because the relief sought was private in that it would benefit only a narrow group of "similarly situated individuals who would borrow money from Lender and agree to a similar arbitration provision."  (*Id.* at p. 720.)

The court rejected this contention, concluding that the complaint "does not limit the requested remedies for only some class members, but rather encompasses all consumers and members of the public."  (*Maldonado, supra*, 60 Cal.App.5th at p. 721.)  Moreover, "an injunction under the CLRA against Lender's unlawful practices will not directly benefit [the plaintiffs] because they have already been harmed and are aware of the misconduct."  (*Ibid.*)  The court further rejected Lender's argument that the lawsuit challenged only the interest rates charged in the putative class members' loans.  "To accept this argument, we would have to ignore the complaint's unequivocal request to enjoin Lender from harming other consumers *in future contracts* for outrageous interest rates."  (*Ibid.*)  Ultimately, the court agreed with the plaintiffs that "although 'not all members of the public will become customers of [Lender],' this does not negate the fact that public injunctive relief will nevertheless offer benefits to the general public . . . .  The requested injunction cannot be deemed private simply because Lender could not possibly advertise to, or enter into agreements with, every person in California."  (*Id.* at pp. 722-723.)  "Such a holding would allow Lender to continue violating the UCL and CLRA because consumers harmed by the unlawful practices would be unable to act as a private attorney general and seek redress on behalf of the public."  (*Ibid.*)

As in *Mejia* and *Maldonado*, the requested injunction here "seeks to enjoin future violations of California's consumer protection statutes."  (*Mejia, supra*, 54 Cal.App.5th at p. 703.)  The complaint does not limit the requested remedies to Ramsey himself or those similarly situated, but "encompasses all consumers and members of the public." (*Maldonado, supra*, 60 Cal.App.5th at p. 721.)  For example, in connection with his

13

CLRA claim, Ramsey seeks "public injunctive relief enjoining Defendants' unfair or deceptive acts or practices . . . to prevent future injury to the general public." In connection with the two UCL claims, Ramsey seeks "a permanent injunction requiring Defendants to halt their practice of issuing secret discounts" and "related injunctive relief that . . . ensure consumers are aware of any and all price reductions and rebates." In the prayer for relief, Ramsey seeks to enjoin Comcast "from continuing their unlawful and unfair business practices."

The injunctive relief Ramsey seeks here is forward-looking and "oriented to and for the benefit of the general public." (*Mejia, supra*, 54 Cal.App.5th at p. 703.) The requested relief also does not directly benefit Ramsey, as he has "already been harmed and [is] aware of the misconduct." (*Maldonado, supra*, 60 Cal.App.5th at p. 721.) Ramsey and those similarly situated to him are already aware of Comcast's practice of offering "new" promotional rates only to those who reach out to Comcast toward the end of their subscription cycle, and the relief he seeks–i.e., cessation of Comcast's unfair or deceptive practices–will not compensate him for the "ascertainable loss of money" he had previously incurred from "paying nonpromotional rates when he did not immediately contact [Comcast] to obtain new promotional pricing." Rather, the requested injunction would primarily benefit existing and potential Comcast subscribers by providing them with more truthful and transparent pricing options. To the extent Ramsey benefits from this relief, it would be incidentally, as a member of the public. (See *McGill, supra*, 2 Cal.5th at p. 955.)

*(b) Hodges*

The Ninth Circuit's decision in *Hodges* deviated sharply from *Mejia* and *Maldonado*, holding that unless a plaintiff's requested injunctive relief benefits the entire public "as a diffuse whole," it does not fall within *McGill*'s definition of public injunctive relief. (See *Hodges, supra*, 21 F.4th at p. 549.) *Hodges* also examined the holdings of *Mejia* and *Maldonado* and concluded that they represent a "patent misreading of

14

California law." (*Id.* at p. 544.) Comcast urges that we follow *Hodges*, but we respectfully disagree with both its holding and the Ninth Circuit's characterization of *Mejia* and *Maldonado*.

In *Hodges*, a former Comcast subscriber brought a putative class action lawsuit against Comcast, alleging that Comcast violated class members' statutory privacy rights by collecting various personal data without first obtaining subscriber consent. (*Hodges, supra*, 21 F.4th at pp. 537-538.) The complaint alleged various federal and state law violations, including a violation of the UCL. (*Id.* at p. 538.) Among other things, the complaint sought "statewide public injunctive relief" to require Comcast to "clearly and conspicuously notify cable subscribers in writing, at the requisite times, of the period during which it maintains their [personally identifiable information ("PII")], including video activity data and demographic data." (*Id*. at pp. 538, 548-549.)

Comcast moved to compel arbitration under the subscriber agreement. (*Hodges, supra*, 21 F.4th at pp. 538-539.) The district court denied the petition based on *McGill* and Comcast appealed. The Ninth Circuit reversed, holding that *McGill* was not implicated because the complaint did not seek public injunctive relief. (*Id.* at p. 540.) While recognizing that some of the relief sought was "forward-looking prohibitions against future violations of law," the *Hodges* majority nevertheless concluded that alone was "not enough to classify the remedy as public within the meaning of the *McGill* rule." (*Id.* at p. 549.) Instead, to meet *McGill*'s definition of public injunctive relief, the plaintiff must seek relief that "could be said to primarily benefit the general public as a more diffuse whole." (*Ibid.*) Under that definition, the plaintiff in *Hodges* was not seeking public injunctive relief because the requested relief would benefit only Comcast cable subscribers. (*Ibid*.) The *Hodges* majority further posited that the plaintiff in *Mejia* was not seeking public injunctive relief because the requested injunction there would only "benefit the class of persons who actually purchased motorcycles, and not the general public as a whole." (*Id.* at pp. 544-545.) *Hodges* also disagreed with

15

*Maldonado*, noting that the plaintiff there was not seeking public injunctive relief because his requested injunction would only benefit "those who actually sign lending agreements." (*Id.* at p. 545.)

### (c) Mejia and Maldonado Are More Consistent with McGill

The definition of public injunctive relief the courts set forth in *Mejia* and *Maldonado* is consistent with *McGill*, in which our Supreme Court expressly recognized injunctions issued under the CLRA and UCL as injunctions that benefit the public. (See *McGill, supra*, 2 Cal.5th at p. 955.) Injunctive relief under the CLRA and UCL is precisely what plaintiffs sought in *Mejia* and *Maldonado*, and what Ramsey seeks here. In our view, *Mejia* and *Maldonado*'s definition of public injunctive relief also better reflects the overarching purpose of the consumer protection statutes. While the requested injunction in those cases and here may not benefit the entire public as a "diffuse whole," we agree with the court in *Maldonado* that "a requested injunction cannot be deemed private simply because [a business] could not possibly advertise to, or enter into agreements with, every person in California . . . . Such a holding would allow [that business] to continue violating the UCL and CLRA because consumers harmed by the unlawful practices would be unable to act as a private attorney general and seek redress on behalf of the public." (*Maldonado, supra*, 60 Cal.App.5th at pp. 722-723.) *McGill* did not require that public injunctive relief have such a universal reach.

Finally, we disagree with the majority in *Hodges* that the requested injunctions in *Mejia* and *Maldonado* stood to benefit only those who purchased motorcycles or signed lending agreements. (See *Hodges, supra*, 21 F.4th at pp. 544-545.) We find compelling the reasoning of the dissent, which observed that an injunction requiring a dealership to provide consumers with statutorily mandated disclosures in a single document, though not benefiting every member of the public, would benefit "potential *and* actual purchasers of motorcycles . . . when they are considering whether to enter into a transaction." (*Id.* at pp. 551-552.) Similarly, an injunction prohibiting a lender from

16

charging "unconscionable interest rates" would benefit not only those who took out loans, but any member of the public with limited credit options who find themselves in need of cash. (*Ibid.*)

The injunctive relief Ramsey seeks in this case would require Comcast to cease its "unfair or deceptive practices" and provide increased pricing transparency. Such relief would benefit not only those who subscribe to Comcast (such as Ramsey), but any member of the public considering such a subscription, by "preventing [Comcast] from contracting or proposing to contract with any member of the public–not just current customers–on unfair terms." (*Hodges, supra*, 21 F.4th at p. 551.) This is the essence of what the consumer protection statutes are designed to do. (*McGill, supra*, 2 Cal.5th at p. 954 [purpose of CLRA is to "protect consumers against unfair and deceptive business practices," and purpose of UCL is to "prevent "protect both consumers and competitors by promoting fair competition"].)[3]

Because the relief Ramsey requests both "seeks to enjoin future violations of California's consumer protection statutes," and is "oriented to and for the benefit of the

[3] To the extent we look to federal authority to guide our analysis on the issue of whether Ramsey's requested injunctive relief is public or private, *Blair v. Rent-A-Center, Inc.* (9th Cir. 2019) 928 F.3d 819 (*Blair*) is more consistent with *McGill*. In *Blair*, plaintiffs entered into "rent-to-own agreements" with Rent-A-Center, which operates stores that rent household items to consumers for set installment payments. (*Blair, supra*, 928 F.3d at p. 822.) They subsequently brought a putative class action lawsuit against the company, alleging that it structured its rent-to-own pricing in violation of California law, including the Karnette Rental-Purchase Act, the CLRA, and the UCL. (*Ibid.*) Among other forms of relief, plaintiffs' complaint sought an injunction against the company to "enjoin future violations of these laws." (*Id.* at p. 823.) The Ninth Circuit held that plaintiffs' requested relief constituted public injunctive relief under *McGill*–even though the requested injunction would not benefit every member of the public, but only those who enter or contemplate entering into an agreement with Rent-a-Center. (See *id.* at p. 831, fn. 3; see also *Hodges, supra*, 21 F.4th at p. 550.) Under *Blair*, benefitting every member of the public as a "diffuse whole" was neither necessary nor required. It was sufficient that plaintiffs sought "to enjoin future violations of California consumer protection statutes, relief oriented to and for the benefit of the general public." (*Blair, supra*, at p. 831, fn. 3.)

general public," it falls within *McGill*'s definition of public injunctive relief.  (See *Mejia, supra*, 54 Cal.App.5th at p. 703.)

## C. *The FAA Does Not Preempt* McGill

Lastly, Comcast argues that the FAA preempts *McGill*.  The Supreme Court held in *McGill* itself that there is no preemption.  (*McGill, supra*, 2 Cal.5th at p. 963; *Maldonado, supra*, 60 Cal.App.5th at p. 724 [rejecting Lender's argument that the FAA preempts *McGill*].)  As Comcast acknowledges, we are bound to follow Supreme Court precedent.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)  We do so here, concluding that the FAA does not preempt *McGill*.

## III.  DISPOSITION

The order denying the petition to compel arbitration is affirmed.

_____
Greenwood, P. J.

WE CONCUR:


_____
Grover, J.


_____
Lie, J.


H049949
Ramsey v. Comcast Cable Communications, LLC

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CHARLES RAMSEY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> COMCAST CABLE COMMUNICATIONS, LLC, <br><br> Defendant and Appellant. | H049949 <br> (Santa Clara County <br> Super. Ct. No. 21CV384867) |

BY THE COURT:

The written opinion, which was filed on December 29, 2023, has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is therefore ordered that the opinion be published in the official reports.

(Greenwood, P. J., Grover, J. and Lie, J. participated in this decision.)

Date:_____          _____ P.J.

20

Trial Court:                                    Santa Clara County Superior Court
                                                Superior Court No.: 21CV384867

Trial Judge:                                    The Honorable Patricia M. Lucas


Attorneys for Plaintiff and Respondent,
Charles Ramsey:                                 Daniel S. Jonathan
                                                Freeman, Freeman & Smiley

                                                Bevin Elaine Pike
                                                Trisha Kathleen Monesi
                                                Ryan Hung-Hsi Wu
                                                Liana Carol Carter
                                                Capstone Law APC


Attorneys for Defendant and Appellant,
Comcast Cable Communications, LLC:              Aileen Marie McGrath
                                                Michael Weisbuch
                                                Marshall Lee Baker
                                                Akin Gump Strauss Hauer & Feld LLP


H049949
Ramsey v. Comcast Cable Communications, LLC